S. S. KRESGE COMPANY, a Corporation, Appellant, v. UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI and HELEN L. FORSYTH. —162 S. W. (2d) 838.

Division Two, March 13, 1942.

Rehearing Denied, May 5, 1942.

Motion to Transfer to Banc Overruled, June 17, 1942.

*Henry L. Jost* and *Roger C. Slaughter* for appellant.

*Harry G. Waltner, Jr.,* and *Viva Hunt* for respondent.

BOHLING, C.—Helen L. Forsyth, prior to her marriage, had been an employee of the S. S. Kresge Company, a corporation, at Kansas City, Missouri, having been employed November 1, 1934, and having voluntarily quit work January 15, 1939. As Mrs. Forsyth, she filed for benefits under the Missouri Unemployment Compensation Law (Ch. 52, Art. 2, Sec. 9432, R. S. 1939) on August 23, 1939. Her employer, through the Missouri State Employment Service (Sec. 9435, of said law) offered Mrs. Forsyth employment, she being able and available for work and having registered therefor, et cetera (Sec. 9430, with respect to eligibility for benefits). She made no effort to accept said offer and the employer claimed her wage credits should be cancelled under Subsec. III of Sec. 9431, R. S. 1939. The Employment Compensation Commission (hereinafter designated Commission) found that Mrs. Forsyth "left work voluntarily without good cause" and disqualified her for two weeks' benefits under Subsec. I, Subdiv. (a) of Sec. 9431; but, being of opinion that Mrs. Forsyth's failure to accept work was "with good cause," allowed benefits of $6.44 per week, subject to a maximum of $64.96 in benefits, on the theory principally that "the *work* offered claimant must be new work in order for it to be *suitable work*" to effect a cancellation of wage credits under Subsec. III, and that to hold otherwise would permit an employer, by offering reemployment in the same work, to arbitrarily destroy Subsec. I (a), and the employee's benefit rights. The employer perfects this appeal from a judgment affirming the action of the Commission, contending, among other things, that the action of the Commission deprives it of its property without due process of law.

The applicable provisions of Sec. 9431 read:

"I. An individual shall be disqualified for benefits under the following conditions and in each case the weeks of such disqualification shall be deducted from the benefit period and his wage credits charged correspondingly as if benefits had been paid, whether or not such individual obtains other employment during such weeks of disqualification.

"(a) For the week in which he has left work voluntarily without good cause, if so found by the Commission, and for not more than the four weeks which immediately follow such week, as determined by the Commission according to the circumstances in each case. . . .

"III. If the commission finds that an individual has failed without good cause either to apply for available suitable work when so directed by the commission or to accept suitable work when offered

him by the commission, or to return to his customary self-employment (if any) when so directed by the commission, all wage credits accruing to such individual as to the date of such refusal shall be cancelled as of the date of such refusal.

"(a) In determining whether or not any work is suitable for an individual, the commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence."

■ Section 9432, Subsec. (i), R. S. 1939, provides for the Commission's certification and filing with the court in review proceedings of "all documents and papers and a transcript of all testimony taken in the matter, together with its findings of fact and decision therein;" and: "In any judicial proceeding under this section, the findings of the commission as to the facts, if supported by competent evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." The act contemplates findings by the Commission of the constitutive facts essential to its holdings. Consult State ex rel. v. Haid, 333 Mo. 390, 398[3], 62 S. W. (2d) 869, 872[3]. We said, as pointed out by the Commission, in A. J. Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S. W. (2d) 184, 186, that the rule with respect to the facts in Workmen's Compensation Commission review proceedings obtains in Unemployment Compensation Commission review proceedings, viz.: "Findings of fact made by the commission, if sustained by sufficient competent evidence, are, absent fraud, conclusive on appeal . . .'" In Workmen's Compensation cases, we also have observed: Whether the facts found are so sustained is a question of law. Leilich v. Chevrolet Motor Co., 328 Mo. 112, 120(II), 40 S. W. (2d) 601, 604[II]. If the evidence, although some, be not legally sufficient or lack sufficient probative force to sustain the award, the findings and award are not binding on the court and it is the duty of the court to set aside the award. Yancey v. Egyptian Tie & Timber Co. (Mo. App.), 95 S. W. (2d) 1230, 1231[4]; Newman v. Rice, Stix D. G. Co., 335 Mo. 572, 580, 73 S. W. (2d) 264, 268. The scintilla of evidence rule does not obtain in this jurisdiction. Wallingford v. Terminal Rd. Assn., 338 Mo. 1147, 1159, 88 S. W. (2d) 361, 366[6]. Consult: Consolidated Edison Co. v. National Labor Relations Board, 305 U. S. 197, 229, 59 Sup. Ct. 206, 83 L. Ed. 126; National Labor Relations Board v. Columbia Enameling & Stamping Co., 309 U. S. 292, 299, 59 Sup. Ct. 501, 83 L. Ed. 660.

■ The record discloses that Lyndell H. Drum was the only witness before the Commission. ■ He was assistant manager of the employer, in charge of the personnel. He testified: "Q. What position [with respect to the employer's reemployment of claimant]

did you have in mind for claimant? A. The same position as she quit. We could have used her in the same capacity in the same department . . . If she had appealed to us at that time for employment, I am quite sure she could have had it." This is not substantive proof that the employer was restricting claimant's reemployment to her former position. It proceeds on the thought claimant would prefer her former position and a willingness of the employer to meet her anticipated desires. It did not shut the door to efforts for affording suitable work. Claimant did not even apply for reemployment, as contemplated in Subsec. III, supra.

Nor is there evidence of substantial probative value to support a finding that claimant refused to return to work which was not suitable. Claimant did not appear at the hearing. The testimony established that she was not married at the time she left her work; that her record was good; that she had had no difficulties; that she made no complaint; that she quit without warning or notice to her employer; and that she stated she was going to be married, her husband would support her and her working days were over. The record is devoid of substantive proof that her former position was not "suitable work," in fact of any objection to her former position. The legitimate inference from the testimony is that she quit for a reason that was not referable to her employment and that her work had been suitable and not objectionable to her.

We think the reasoning of the Commission fallacious. We perceive nothing inconsistent between the provisions of Subsecs. I and III. When, in any given case, Subsec. III becomes operative, it, by cancelling all wage credits, was designed to and does supplant Subsec. I, which provides for limited disqualifications only. The provisions of Subsec. I meet the state of facts therein contemplated. The provisions of Subsec. III meet another and more aggravated state of facts. A myriad of reasons may be advanced by different employees and a given employee may have a number of reasons for quitting work. Some may be based on objections to the work. Others may be based on reasons not connected with the work. There is no provision in the law upon which to plant a ruling that the former work or that new work is or is not suitable. In given instances new work may be less suitable than the former work, and for employees, skilled in a particular line of work, the former work may be the most acceptable or, in conceivable instances, the only acceptable available work for the given employee. Being less suitable does not make the work not suitable. The argument, advanced by the Commission, that a ruling that the former work may be "suitable work" within the provisions of Subsec. III permits the employer to arbitrarily wipe out the employee's benefit rights under the law begs the question, and the other extremity that it is the employee who determines the work is not suitable finds no support in the law. Arbitrary standards hav-

ing no foundation in the specific provisions of law are not to be set up. Each individual case must rest upon its own facts. Neither the employer nor the employee (or for that matter, the Commission) may arbitrarily determine what work is or is not suitable. The function of determining the suitableness of any given work in a contested case is explicitly entrusted, after a hearing thereon, to the Commission. When the Missouri State Unemployment Service tendered Mrs. Forsyth her employer's offer of reemployment, a presumption should exist that it considered the work prima facie suitable. There is no showing upon any hearing had that the work here involved was not suitable. Unemployment Compensation laws are not necessarily designed for the adjustment of rights between employees and employers in the sense that they are adversary litigants but contemplate, we think, that matters within their scope, in the first instance, may be adjusted through a compliance with the provisions and mutual efforts to avoid contested issues. Section 9422, R. S. 1939, declared the public policy of the State:

"Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state resulting in a public calamity. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

If a controversy develops between an employer and the employee, the law makes provisions for a fair hearing before and an impartial determination by the Commission. [Consult Morgan v. United States, 304 U. S. 1, 22, 58 Sup. Ct. 773, 82 L. Ed. 1129.] Administrative agencies should function within constitutional and legislative prescribed limits—in accord with due process of law—that our avowed constitutional democracy not become an administrative absolutism or an empty pretense. They, as well as the courts, should treat adversaries as equals before the law of the land.

The judgment is reversed and the cause remanded. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.