HUIET, commissioner, *et al. v.* SCHWOB MANUFACTURING COMPANY.

Nos. 14653, 14654. NOVEMBER 11, 1943.

*A. L. Henson, Clifford Walker, Otis L. Hathcock,* for plaintiff in error. *R. M. Arnold,* contra. *B. M. Parker, as amicus curiæ.*

BELL, Chief Justice. These cases are before this court on questions certified by the Court of Appeals.

In case No. 14653 instructions upon the following questions were requested:

"1. Is an employee who is a married woman living with her husband, a soldier in the Army of the United States, and who voluntarily quits her employment solely for the purpose of joining and living with him at a distant point to which he has, under military authority, been transferred, which point is too far for her to commute to her work, disqualified from receiving unemployment compensation under the provision of the Georgia unemployment-compensation act as amended, as published in the Ga. Code Ann. § 54-6?

"2. Is the registration by such married woman for work, made at the place to which she has removed, and her filing of a claim at such place, which registration and filing of a claim have been regularly made in accordance with the provisions of the act as amended as contained in Code, §§ 54-609 and 54-611, and the signing by her and filing at the time required of a printed form as a condition precedent to the filing of the claim in which she stated that 'I am unemployed, able to work and available for work and registered for work,' but where there is no other evidence as to her ability to work or availability for work, sufficient to authorize the commissioner of the Department of Labor of this State to find that she is 'able to work, and is available for work?'"

In case No. 14654, the questions are as follows:

"1. Is a woman employee, who voluntarily quits her employment solely for the purpose of getting married and moving to a city about one hundred and twenty-five miles distant, and does after quitting her employment, get married and goes to live with her husband in such distant city where he resides, disqualified from receiving unemployment compensation under the provisions of the Georgia unemployment-compensation act as amended, as published in Ga. Code Ann. § 54-6?

"2. Where, after she has registered for work and has filed her claim for unemployment compensation at the office of the United States Employment Service in the city to which she has removed,

it appears that she is able to work and is willing and ready to accept work, but does not find any work, and her former employer communicates with the office of the United States Employment Service in the city where the employer is located, and requests that the claimant be advised that her job is available for her, that she declines to return to her former job with her former employer because of the distance of the work from her newly acquired residence and her unwillingness to leave her husband, does the claimant by such conduct render herself unavailable for work and therefore ineligible under the requirements of Ga. Code Ann., § 54-609, to receive unemployment compensation under the unemployment compensation act as amended?"

■ The questions certified in these cases, two in each case, are so closely related that we shall consider them all in one opinion.

The first question in case No. 14653 is substantially this: Where an employee is a married woman living with her husband, who is a soldier, and she voluntarily quits her employment for the sole purpose of joining and living with him at a distant point to which he has been transferred under military authority, which point is too far for her to commute to her work, does she by such quitting and removal disqualify herself from receiving compensation under the Georgia unemployment-compensation act as amended?

The original act, as passed in 1937, has been amended several times, and in various respects. Ga. L. 1937, p. 806; Ga. L. Ex. Sess. 1937-8, p. 356; Ga. L. 1941, p. 532; Ga. L. 1943, p. 610; Georgia Code Annotated, Cumulative Part, chapter 54-6. Generally speaking, section 4 relates to eligibility to receive any compensation whatever for a period or periods claimed, while section 5 disqualifies eligible employees for varying periods, depending on the circumstances. Under the latter section, employees, though eligible, may be docked for different periods, according to their conduct and other circumstances, thus losing a portion of the benefits to which they might otherwise be entitled.

The question that is being considered in this division evidently refers to disqualification, and not to eligibility.

The general policy of the act is stated in section 2, as follows: "As a guide to the interpretation and application of this act, the public policy of this State is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health,

morals, and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern, which requires appropriate action by the Legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker or his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The Legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this State require the enactment of this measure, under the police powers of the State, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." Ga. L. 1937, p. 807.

So far as here material, section 5, as amended by the act of 1941, declares that "An individual shall be disqualified for benefits—

"Section 5(a). For the week or fraction thereof in which he has left work voluntarily without good cause connected with his most recent work, and for not less than the two and not more than the eight consecutive weeks of unemployment which immediately follow such week, as determined by the commissioner according to the circumstances in each case, not counting the waiting period." Ga. L. 1941, p. 536. As to waiting period, see section 4.

Plainly, a married woman who voluntarily quits her work, for the sole purpose of joining and living with her husband at a point so far away that she cannot continue to work at the same place, leaves her work voluntarily without good cause connected with her most recent employment, within the meaning of the foregoing provision. The fact that she is a married woman and may owe a superior duty to her husband does not place her in duress or destroy her free agency in such matter; and while the cause of her leaving may have been a good cause from the standpoint of society, it was clearly not a cause connected with her employment. Where she thus voluntarily chooses between continuing her employment and living with her husband when she cannot possibly do both, she

deliberately waives her status as an insured employee, and must accept the consequences. Even though the choice so made by her may not be termed a *fault*, yet the phrase "through no fault of their own." as used in section 2, supra, evidently refers to causes beyond "their" control, and the matter here was subject to the employee's own volition. In such case the employee becomes the author of her own disqualification; and this is true even though she as a married woman may have chosen the better part, not only for herself, but for society as well. The first question in case No. 14653 is answered in the affirmative. The first question in case No. 14654 is similar, and on like principles, it is also answered in the affirmative.

The views above expressed accord generally with the decisions of other courts relating to similar questions. Ex parte Alabama Textile Products Corporation, 242 Ala. 609 (7 So. 2d, 303, 141 A. L. R. 87); Talley v. Unemployment Compensation Division of Industrial Accident Board, Idaho, 124 Pac. 2d, 784; Woodmen of the World Life Insurance Society v. Olsen, 141 Neb. 776 (4 N. W. 2d, 923); S. S. Kresge v. Unemployment Compensation Commission, 349 Mo. 590 (162 S. W. 2d, 838).

■ The second question in case 14653 relates to evidence, and is in effect whether, in the absence of other evidence, the applicant's act of registering for work and the signing and filing of a claim for unemployment benefits, in which the applicant states, "I am unemployed, able to work and available for work and registered for work," would be sufficient to authorize the commissioner of the Department of Labor to find that the applicant is "able to work and available for work," within the meaning of section 4, relating to eligibility. We answer this question in the negative. The filing of some kind of claim is essential to recovery of unemployment benefits, and the statements contained therein should be proved in some way. See section 6 of the original act as amended by the act of 1939; Georgia Code Annotated, Cumulative Part, §§ 54-610 to 54-619, inclusive. In this State an oath or affirmation is required of all witnesses, and unsworn statements are not treated as amounting to any evidence, except "in specified cases from necessity." Code, §§ 38-301, 38-1701; *Eastlick* v. *Southern Railway Co.,* 116 *Ga.* 48 (42 S. E. 499). In this case the applicant's statement that she is able to work and available for work does not fall within any

exception to the general rule, but is a mere self-serving declaration, without probative value. It is like the unverified allegations in any other pleading, which cannot prove themselves, but must be sustained by evidence, in order for the pleader to prevail. *Dixon* v. *Monroe,* 112 *Ga.* 158 (3) (37 S. E. 180); *Nelson* v. *Solomon,* 112 *Ga.* 188 (2) (37 S. E. 404); *Byrd* v. *Prudential Insurance Co.,* 182 *Ga.* 800 (1 *b*) (187 S. E. 1); *Grizzel* v. *Grizzel,* 188 *Ga.* 418 (2) (3 S. E. 2d, 649).

The unemployment compensation act speaks of evidence, witnesses, oaths of witnesses, depositions, and the like; and we find nothing that would lead to the view that what 'is wholly without probative value in other proceedings may be taken as evidence in a proceeding under this statute. It is true that section 16 imposes a penalty for knowingly making a false statement or knowingly concealing a material fact; but this provision manifestly does not repeal any existing rule of evidence. *Atlantic Log & Export Co.* v. *Central of Georgia Railway Co.,* 171 *Ga.* 175 (155 S. E. 525). But it is declared in section 6(f) that, "The manner in which disputed claims shall be presented, and the conduct of hearings and appeals, shall be in accordance with regulations prescribed by the Board of Review for determining the rights of the parties, whether or not such regulations conform to common law or statutory rules of evidence and other technical rules of procedure;" and it is insisted by the commissioner that under this provision such statements in an application for benefits may be treated as evidence, in determining the rights of the parties. We cannot agree that this is a proper interpretation of the quoted provision. Any such construction would render the provision unconstitutional as an attempt by the General Assembly to delegate its authority to declare by legislation what may be considered as evidence, whereas a statute should be construed consistently with the constitution if it can be reasonably so interpreted. Code, § 2-1201; *Banks* v. *State,* 124 *Ga.* 15 (5) (52 S. E. 74, 2 L. R. A. (N. S.) 1007); *Melton* v. *State,* 180 *Ga.* 104 (178 S. E. 447); *Southern Railway Co.* v. *Melton,* 133 *Ga.* 277, 290 (65 S. E. 665); *Fordham* v. *Sikes,* 141 *Ga.* 469 (1 *a*) (81 S. E. 208); 11 Am. Jur. 955, § 240; 20 Am. Jur. 38, § 8. Accordingly, in our opinion, what this provision means, and all that it means, is that the department need not observe the niceties of pleading, or follow the technical rules as to method of

producing and hearing evidence or the examination of witnesses. Liquid Carbonic Co. *v.* Industrial Commission, 352 Ill. 405 (186 N. E. 140, 87 A. L. R. 770). It would not permit the commissioner or any tribunal in the department to sanction as evidence something which clearly is not evidence, in that it is wholly without probative value, as the statements referred to by the Court of Appeals appear to be. Such statements alone would not authorize a finding that the applicant is "able to work and is available for work," within the purview of section 4; and so, as we said above, question 2 in case No. 14653 must be answered in the negative.

■ While question 1 in case No. 14654 has already been answered, the facts stated therein must be considered in connection with question 2 in the same case, which is the next and final question to be considered. This question, then, is substantially as follows: Where a woman employee voluntarily quits her employment solely for the purpose of getting married and moving to a city about one hundred and twenty-five miles distant, and after so marrying removes to and lives in such city with her husband, and where, after she has registered for work and has filed her claim for unemployment compensation at the office of the United States Employment Service in the city to which she has removed, it appears that she is able to work and is willing and ready to accept work, but does not find any work, and her former employer communicates with the office of the United States Employment Service in the city where the employer is located and requests that the claimant be advised that her job is available for her, that she declines to return to her former job with her former employer because of the distance of the work from her newly acquired residence and her unwillingness to leave her husband, does the claimant by such conduct render herself unavailable for work, and therefore ineligible to receive unemployment compensation under the unemployment-compensation act as amended?

Under section 4, in order for an individual to be eligible for benefits for any week, it must be found, among other things, that "he is able to work and is available for work." In section 5(c) (1), relating to disqualification, it is declared: "In determining whether or not any work is suitable for an individual, the commissioner shall consider the degree of risk involved to his health, safety, morals, his physical fitness and prior training, his experi-

ence and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence." Ga. L. 1937, p. 812. By analogy it would seem that ordinarily an employee would not be declared unavailable for work and therefore ineligible, under section 4, merely because the only "available work" is so far from her residence that it cannot be accepted; but where the distance was brought about by the employee's own voluntary act in quitting her employment for the sole purpose of getting married and going to a distant city to live with her husband, and, although she is able and willing to work, she does not find any work in such locality, she thereby voluntarily renders herself unavailable for work, and therefore ineligible within the meaning of section 4. When she leaves her employment under these circumstances, she voluntarily places distance between her residence and her only work, and cannot claim such distance as rendering the work unsuitable. In other words, in thus making marriage and companionship with her husband the first and controlling considerations, in that she chooses them regardless of the opportunities for employment, she thereby effectually removes herself from the labor market, and in doing so renders herself ineligible for any benefits for unemployment resulting from such choice.

While the unemployment-compensation act is not against marriage, it deals with an entirely different subject; and employees who happen to be married, or elect to enter into such relationship, must take their places under this law just as other individuals, and cannot bend its provisions to meet their special requirements as married persons. Question 2 in case 14654 is answered in the affirmative. See authorities cited in the first division of this opinion. *All the Justices concur.*