(No. 41820.—

JOE WADLINGTON, Appellant, *vs.* MARVIN W. MINDES *et al.,*
Appellees.

*Opinion filed May 27, 1970.*

Underwood, C.J., specially concurring.

Robert Bennett, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, (Francis T. Crowe and Herman R. Tavins, Assistant Attorneys General, of counsel,) for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

In an action under the Administrative Review Act (Ill. Rev. Stat. 1967, ch. 110, par. 264 *et seq.*) the circuit court of Cook County affirmed a decision of the Board of Review of the Department of Labor of the State of Illinois. The claimant, Joe Wadlington, has appealed. The Board had determined that the claimant was ineligible to receive Illinois unemployment compensation benefits during two periods of unemployment. On both occasions he left jobs in Chicago, Illinois, and went to Oxford, Mississippi, where jobs were less plentiful than in Chicago. On this appeal, the claimant challenges the constitutionality of section 500C3 of the Illinois Unemployment Compensation Act (Ill. Rev. Stat. 1967, ch. 48, par. 420C3), which defines as ineligible for benefits an unemployed person who removes himself to a locality "where opportunities for work are substantially less favorable" than in the locality he left.

On June 24, 1966, the claimant quit his job as a roofer's helper with South Shore Sheet Metal Works in Chicago and went to Oxford. He told his employer that he was doing so in order to care for his mother, who lived in Oxford and

had suffered a heart attack. His employer had previously granted him several leaves of absence from his job to be with his ailing mother, but on this occasion the claimant said that he wanted to terminate his employment. From the employer's objection to Wadlington's claim, it appears that the claimant's wife telephoned shortly thereafter to inquire whether he had drawn his pay check, and to ask where he had said he was going. Subsequently the claimant undertook to furnish a doctor's certificate concerning his mother's illness, but he did not do so. The claimant filed claims for unemployment compensation benefits under the Illinois Unemployment Compensation Act (Ill. Rev. Stat. 1967, ch. 48, par. 300 *et seq.*) for the week ending July 23, 1966, and for each subsequent weekly period through August 13, 1966. These claims were filed with an office of the Mississippi Employment Security Commission. The record shows that during the four-week period for which he sought benefits, he applied unsuccessfully for jobs with nine separate employers, all located in Oxford.

On his claim forms, Wadlington named Illinois as the liable State and South Shore Sheet Metal Works as his most recent employing unit. A deputy of the Illinois Division of Unemployment Compensation made a finding under section 701 of the Illinois Act (Ill. Rev. Stat. 1967, ch. 48, par. 451) that the claimant had been employed in Illinois long enough to entitle him, if otherwise qualified, to unemployment compensation, and also ruled that the claimant had left work for "good cause" (Ill. Rev. Stat. 1967, ch. 48, par. 431). However, the deputy determined that the claimant was ineligible for benefits because under section 500C3 of the Act (Ill. Rev. Stat. 1967, ch. 48, par. 420C3), he had removed himself to "an area where opportunities for work are substantially less favorable than those in the area which he left." This determination was based upon the fact that the claimant had left the Chicago area, which had very good work opportunities and a shortage of labor, and

had gone to an area where his chances of being hired were remote. It was also based upon the fact that he had restricted his search for employment solely to Oxford, a university town with a permanent population of approximately 5300 and a student population of approximately 8000. The claimant filed a notice of appeal from the deputy's decision, claiming that he had been available for work as far away as Memphis, Tennessee.

While this appeal was pending before a referee of the Illinois Division of Unemployment Compensation, the claimant returned to Chicago where he immediately obtained work as a machinist's helper with the Consolidated Welding Company. Three months later, on January 7, 1967, he slipped on the ice and fractured his ankle. As a result he was hospitalized in a Veterans' Administration hospital in Chicago for two weeks, after which he remained in Chicago without work for approximately three months until a cast was removed from his leg. He returned to Oxford for a short period, and then entered a Veterans' Administration hospital in Memphis, Tennessee, for further treatment of his ankle. After remaining for one week in that hospital, he was released on April 14, 1967, and returned to Oxford, where he had been born and raised. He made no effort to return to his job with the Consolidated Welding Company in Chicago because, he said, "I just decided to come home."

After about one month, when the claimant felt that he had sufficiently recovered from his injury, he again began seeking employment in Oxford. He sought work as a cook, a mechanic, a construction worker, and a laborer; in total he applied for 17 jobs in a six-weeks period. He failed, however, to seek a job in Grenada, Mississippi, a town 50 miles from Oxford with a population of about 10,000, where, according to a Mississippi official, there were good job prospects. He first indicated that he lacked transportation to get to Grenada, but later said that he could have borrowed his sister's or his father's car if a job had been available there.

He stated that he had never been to Grenada, didn't know anyone there, and thought it would be a waste of time to go job hunting there unless he had a specific job offer. On September 14, 1967, he obtained a job as a janitor for a fraternity house on the University of Mississippi campus near Oxford.

While the claimant's first appeal was pending before the Illinois referee, he filed additional claims for Illinois unemployment compensation benefits for the week ending June 10, 1967, and for each subsequent weekly period through July 15, 1967. On the basis of an additional investigation, a deputy of the Illinois Division of Unemployment Compensation made the following determination: "Under Section 500C3 of the Illinois Unemployment Compensation Act he is considered to be unavailable for work because after his most recent employment with Consolidated Welding Co. he has removed himself to and remains in Oxford, Mississippi. This is an area where opportunities for work are substantially less favorable than those in the area which he left based on the following facts. Chicago has a low unemployment rate according to U.S. Area Trends in comparison to Oxford, Mississippi, where there are no job prospects for the claimant. He is unable to seek work in Grenada, Mississippi, where jobs for him as a cook are good since he does not have adequate transportation. Therefore, his availability is unduly restricted."

The claimant filed a notice of appeal from this determination, and the appeal was consolidated with his previous appeal. Thereafter, at the request of the Illinois referee, a hearing was held on September 7, 1967, before a hearing referee of the Mississippi Employment Security Commission in Grenada, Mississippi. On the basis of the transcript of this hearing and the entire record in the case, the Illinois referee affirmed the deputy's determination as to both of the periods for which Wadlington claimed benefits. The Board of Review of the Illinois Department of Labor affirmed that

determination, and, as has been stated, in the claimant's administrative review action the circuit court also affirmed.

The primary purpose of the Illinois Unemployment Compensation Act is to relieve "economic distress caused by involuntary unemployment." (*Illinois Bell Telephone Co. v. Board of Review*, 413 Ill. 37, 43; see "Declaration of public policy", Ill. Rev. Stat. 1967, ch. 48, par. 300.) Although the statute does not bar compensation in all cases in which unemployment is due to the voluntary act of the employee, it does exclude from benefits those employees whose voluntary unemployment falls within certain described categories. The claimant's first period of unemployment falls squarely within one of those categories. Section 500C7 of the Act provides: "An individual shall be deemed unavailable for work, if he has left work voluntarily to accompany or join a member or members of his family in another locality: (a) until the marital, filial, or other domestic circumstances which caused the individual to accompany or join such member or members of his family have ceased to exist; or (b) unless the individual is or has become the sole support of himself and of such member or members of his family; or * * * (e) until he has returned to the locality he left." Ill. Rev. Stat. 1967, ch. 48, par. 420.

Wadlington's claim and all of his testimony make it clear that he voluntarily left his employment in Chicago to join his mother in Oxford. Nowhere does the record suggest that he contributed in any way to her support during his period of unemployment, and he did not return to Chicago, where he obtained a job at once, until his mother's condition had substantially improved. Upon the undisputed facts in this record Wadlington's claim is barred by section 500C7.

The claimant argues that this ground of unavailability may not be asserted to defeat his claim because it is not the ground upon which the decision of the administrative

agency was placed and because, although this ground was urged before the circuit court, that court did not expressly refer to it in affirming the ruling of the administrative agency. But the general rule that an appellate court should confine itself to issues raised in earlier proceedings is not a rigid or inflexible one, and, where injustice might otherwise result, a reviewing court may consider questions of law not passed upon by an administrative agency. (See *Hormel* v. *Helvering* (1941), 312 U.S. 552, 85 L. Ed. 1037, 61 S. Ct. 719; 42 Am. Jur. Public Administrative Law, sec. 236.) Application of such an exception in the circumstances of this case accords with the principle that a reviewing court is concerned primarily with the result reached by the trial court ruling and not with the reasons that court gives for the result it reached. *Rabus* v. *Calcari,* 16 Ill.2d 99, 102; *Platz* v. *Walk,* 3 Ill.2d 313, 318; *Lunt* v. *Lorscheider,* 285 Ill. 589; *Hunt* v. *Mitchell,* 409 Ill. 321, 327-28; *cf. Ray Schools-Chicago-Inc.* v. *Cummins,* 12 Ill.2d 376.

Different considerations are applicable to the claimant's second period of unemployment. On that occasion he left his job because he was physically unable to work due to the injury to his ankle. It is suggested that when he had recovered sufficiently to seek employment, after his periods of hospitalization and convalescence, he should have attempted to return to the job that he had held in Chicago at the time of his accident, and that in the absence of evidence that he did so, he cannot be regarded as having left his employment for "good cause". The record in this case, however, contains no evidence concerning the possibility of re-employment with the Consolidated Welding Company, and in the absence of such evidence we are unable to determine that good cause did not exist. With respect to this period of unemployment, therefore, we reach the constitutional issues raised by the claimant.

The intention of the act is to provide benefits for the unemployed person who is willing, anxious, and ready to

accept suitable work at a point where there is an available labor market. (*Mohler* v. *Department of Labor,* 409 Ill. 79; *Fleiszig* v. *Board of Review,* 412 Ill. 49; *Stricklin* v. *Annunzio,* 413 Ill. 324.) To insure that a claimant's unemployment is truly involuntary, the General Assembly has prescribed in section 500 of the Unemployment Compensation Act certain terms and conditions which an unemployed individual must meet if he is to be eligible for benefits. Ill. Rev. Stat. 1967, ch. 48, par. 420.

The provision of section 500 which is directly involved is as follows: "An unemployed individual shall be eligible to receive benefits with respect to any week only if the Director finds that: * * * C. He is able to work, and is available for work; provided that during the period in question he was actively seeking work. * * * 3. An individual shall be deemed unavailable for work if, after his separation from his most recent employing unit, he has removed himself to and remains in a locality where opportunities for work are substantially less favorable than those in the locality he has left." Ill. Rev. Stat. 1967, ch. 48, par. 420.

The claimant contends that the statute is invalid because it conditions his eligibility for unemployment compensation upon his refraining from travel to certain areas, but provides only an impermissibly vague standard by which he can determine where he may go and where he may not go. More basically, he urges that the statute deprives him of his constitutionally protected right to travel from State to State and settle where he pleases without unnecessary governmental interference, and also deprives him of equal protection of the law by denying him a government-sponsored benefit on the basis of a classification which the State is prohibited by the Federal constitution from making.

The crux of the claimant's argument is his contention that the State of Illinois cannot constitutionally condition the payment of unemployment compensation to him upon

the availability or unavailability of jobs in any locality to which he may see fit to travel. If this contention is sound, it is immaterial with what particularity the statute describes the areas in which job opportunities will be considered so inadequate as to render the claimant unavailable for employment. It is appropriate, therefore, to consider first this basic contention before discussing the charge of vagueness which is leveled at the particular statute before us.

In support of his contention that the statute interferes with his right to travel from State to State, the claimant marshals the opinions of the Supreme Court and of justices of that court from *Corfield* v. *Coryell* (1823), 6 Fed. Cas. 546 (No. 3230), ranging through *Shapiro* v. *Thompson* (1969), 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322, including, among other cases, *Edwards* v. *California* (1941), 314 U.S. 160, 86 L. Ed. 119, 62 S. Ct. 164; *Kent* v. *Dulles* (1958), 357 U.S. 116, 2 L. Ed. 2d 1204, 78 S. Ct. 1113; and *Aptheker* v. *Secretary of State* (1964), 378 U.S. 500, 12 L. Ed. 2d 992, 84 S. Ct. 1659.

Unlike the statutes involved in some of the Federal cases upon which the claimant relies, the statute in this case is not aimed at the restriction of travel from one State to another. The legislative concern that one who seeks unemployment compensation benefits shall not have significantly immunized himself from the possibility of employment by moving to an area in which job opportunities are scarce is neither confined to, nor aimed at, interstate travel. This statute applies to areas of low employment within Illinois, as well as outside of it, and it is neutral so far as stimulation or deterrence of interstate travel is concerned. See Michelman, Foreword: On Protecting the Poor through the Fourteenth Amendment, 83 Harv. L. Rev. (1969), 7, 40-47.

The purpose of the statute has been stated, and the relevance of the challenged provision to that purpose is underscored when we consider the method by which unemployment compensation programs are financed. Unemploy-

ment compensation differs from the public assistance programs involved in *Shapiro* v. *Thompson,* in that it is a system of insurance under which employers are required to pay contributions, which resemble insurance premiums, into a fund reserved solely for the payment of benefits to those who suffer the eventuality against which the insurance is provided—unemployment due to lack of job opportunities. Contribution rates vary from one employer to another, depending upon each employer's experience with the risks of unemployment encountered in his particular enterprise. A statutory scheme which thus placed upon employers the burden of financing unemployment compensation benefits without regard to the fact that the person who claims those benefits has made himself unavailable for employment by moving to an area of substantially diminished employment opportunities would, in all likelihood, be vulnerable to attack by the employer. We hold, therefore, that the interest of the State in maintaining the integrity of the statutory scheme of unemployment insurance justifies the imposition of a restriction upon the right of a claimant to move to areas in which employment opportunities are scarce.

We come, then, to the claimant's contention that the statutory standard is so vague, or "overbroad," as to deprive him of due process of law. Concern with the availability of jobs in the area to which a claimant for unemployment compensation has moved is by no means peculiar to Illinois. That concern has been demonstrated in a host of adjudicated cases throughout the country, of which the following are illustrative: *Leach* v. *Board of Review,* 115 Ohio App. 235, 178 N.E.2d 94; *In re Gaede,* 9 App. Div. 2d 588, 189 N.Y.S. 2d 524; *Miles* v. *Review Board,* 120 Ind. App. 685, 96 N.E.2d 128; *In re Peters,* 11 App. Div. 2d 582, 200 N.Y.S.2d 718; *Claim of Sapp,* 75 Ida. 65, 266 P.2d 1027; *Wiley* v. *Carroll* (Mo. 1947), 201 S.W.2d 320; *Huiet* v. *Schwob Mfg. Co.,* 196 Ga. 855, 27 S.E.2d 743; *Walton* v. *Wilhelm,* 120 Ind. App. 218, 91 N.E.2d 373; *cf. Parsons* v.

*Employment Security Com.,* 71 N.M. 405, 379 P.2d 57; *Bliley Electric Co.* v. *Board of Review,* 158 Pa. Super. 548, 45 A.2d 898; see cases cited in 13 A.L.R.2d 874, 880, 883. Many administrative adjudications that demonstrate the same concern are collected in the services. See 1B CCH Unemployment Insurance Reporter, par. 1950.12.

Most, if not all, of these cases were decided under statutes which stated only that a claimant must be available for employment in order to be eligible for unemployment compensation. The courts that decided these cases, however, have taken the position that "availability" depends both upon an attitude and a condition: "Obviously the whole inquiry as to whether a particular claimant for benefits is available for work is an inquiry designed to find out whether the claimant actually wants to work and whether he is so situated that he can work." (Williams, Eligibility for Benefits, 8 Vand. L. Rev. (1955), 286, 292.) One who has moved from the area in which he had been employed to a locality where opportunities for work are less favorable has, realistically speaking, reduced his availability for work, and the courts have consistently so regarded it.

If we were required to decide, as an academic proposition, whether a statute that conditions unemployment compensation upon "availability for employment" is more, or less, vague than a statute like the one before us, which affirmatively warns a prospective claimant that he will be considered unavailable for work if "he has removed himself to and remains in a locality where opportunities for work are substantially less favorable than those in the locality he has left," we would be inclined to hold that the latter statute is less vague, and less overbroad. Of course it can be argued that the legislative body should have described the questionable areas with greater precision. But the inexhaustible variety of situations that may arise, as illustrated by the cases we have cited, shows the impracticability, and, as some of those opinions suggest, the undesirability, of an inflexible

definition. No precise standard that is both practicable and comprehensive enough to embrace fluctuating economic conditions has been suggested, and none has occurred to us.

But we are not required to render an academic decision embracing all possible situations that may, or may not, at some time arise under the statute. Nor is it appropriate that we do so. Every invocation of the first amendment, coupled with a claim "that a statute bearing upon first amendment activities should fall if substantially overbroad" (see, The First Amendment Overbreadth Doctrine, 83 Harv. L. Rev. (1970), 844, 918, does not automatically require a court to disregard the facts of the case before it. As the Supreme Court said with respect to a similar claim, "* * * we will not now pass upon the constitutionality of these regulations by envisioning the most extreme applications conceivable, *United States* v. *Sullivan,* 332 U.S. 689, 694 (1948), but will deal with those problems if and when they arise." *Red Lion Broadcasting Co.* v. *Federal Communications Com.* (1969), 395 U.S. 367, 396, 23 L. Ed. 2d 371, 89 S. Ct. 1794.

When we turn to the effect of the challenged statute upon the situation of the claimant in this case, divorced from hypothetical claims of others, it is clear that he could not have been misled by the asserted vagueness of the statutory provision that one who "has removed himself to and remains in a locality where opportunities for work are substantially less favorable than those in the locality he has left" is to be deemed unavailable for work. His own experience with employment opportunities in Oxford during the preceding year has been recounted. And in connection with his second period of unemployment, in response to the question, "What are his job prospects in Oxford?", the claimant answered, "No prospects at all." In these circumstances there can be no doubt that the claimant knew that employment opportunities in Oxford were "substantially less favorable" than in Chicago.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE UNDERWOOD, specially concurring:

The court reaches the constitutional issues in this case only because it holds the burden is on the Department to show the absence of "good cause" for claimant's second period of unemployment. With this holding I disagree. The claimant left his job because of an ankle injury and not because of any action by the employer. So far as I am aware, this record contains no indication that the claimant could not have returned to that employment as soon as he had sufficiently recovered. He made no attempt to do so. Under these circumstances it seems to me the burden is properly upon the claimant to demonstrate the unavailability of that employment in order to receive unemployment compensation benefits. I would accordingly affirm on that ground without reaching the constitutional issues.