ANGEL ACEVEDO GONZALEZ, APPELLANT-APPELLANT, v. BELL LABORATORIES AND BOARD OF REVIEW, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, RESPONDENTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted January 20, 1975—Decided January 29, 1975.

Before Judges MICHELS, CRANE and MORGAN.

Mr. Angel Acevedo Gonzalez, appellant, *pro se*.

*Mr. William F. Hyland,* Attorney General of New Jersey, attorney for respondent Board of Review, Department of Labor and Industry, State of New Jersey (*Mr. Michael S. Bokar,* Deputy Attorney General, of counsel and on the brief).

*Mr. Godfrey K. Preiser, Jr.,* filed a statement in lieu of brief in behalf of respondent Bell Laboratories.

The opinion of the court was delivered by
MICHELS, J. A. D. Angel Acevedo Gonzalez (claimant) appeals from a decision of the Board of Review, in the Di-

vision of Employment Security, Department of Labor and Industry, affirming a decision of the Appeal Tribunal holding claimant ineligible for unemployment compensation benefits.

Claimant was employed by Bell Laboratories in Hanover Township, Morris County, New Jersey, until November 18, 1972, when his employment was terminated. Sometime thereafter he left Morris County and returned to his home in Aguada, Puerto Rico. He filed a claim for benefits under the New Jersey Unemployment Compensation Law through the Interstate Claims Office in Puerto Rico, in accordance with the uniform interstate procedure for processing out-of-state claims. According to an official report submitted by the Bureau of Employment Security of the Puerto Rican Commonwealth Department of Labor to the United States Department of Labor, the unemployment rate in Aguada, Puerto Rico, at the time claimant moved there in November 1972, was 30.5%. The unemployment rate for Morris County at the same time was only 4.9%. The Interstate Claims Section in the New Jersey Division of Unemployment and Disability Insurance denied the claim on the ground that claimant rendered himself unavailable for work under the Unemployment Compensation Law. Claimant appealed that determination to the Appeal Tribunal.

The Appeal Tribunal, after a *de novo* hearing, affirmed the determination of the Interstate Claims Section, holding that "Claimant moved from an area where he had been employed and earned his wage credits to another area of considerably higher unemployment where his prospects of obtaining work were greatly reduced. By doing so he, in effect, made himself unavailable for work. Therefore, he is ineligible for unemployment compensation benefits * * *." Claimant appealed to the Board of Review, which affirmed the decision of the Appeal Tribunal on the record below. Claimant then appealed to this court. He contends that the Unemployment Compensation Law is being applied in a discriminatory manner against him and all those persons similarly situated who

move to Puerto Rico, and, as so applied, is unconstitutional and violative of his civil rights.

The Division of Employment Security adopted a policy regarding the eligibility of interstate claimants, effective July 1, 1972, of denying unemployment benefits to claimants who move to an area of persistently high unemployment, on the ground that such claimants had voluntarily reduced their prospects of finding employment by restricting their availability to an extremely limited number of job opportunities. The Division, in an effort to provide some concrete guidelines in the administration of this policy, issued an adminstrative instruction (UMI–415) to the Interstate Claims Section, directing it to apply the policy "to any interstate claimant who moves to or near a major labor market area designated by the U. S. Department of Labor as an area of persistent unemployment which had had an unemployment rate of 12% or more for three or more consecutive months."[1] See *Vasquez v. Bd. of Review*, 127 *N. J. Super.* 431, 433–434 (App. Div. 1974).

Claimant merely cites *Galvan v. Levine*, 345 *F. Supp.* 67 (S. D. N. Y. 1972), aff'd 490 *F.* 2d 1255 (2 Cir. 1973), *cert.* den. 417 U. S. 936, 94 S. Ct. 2652, 41 *L. Ed.* 2d 240 (1974), to support his bare charge of discrimination in the application of the New Jersey Unemployment Compensation Law. Our reading of the decisions in this case as well as the companion case of *Galvan v. Catherwood*, 324 *F. Supp.* 1016 (S. D. N. Y. 1971), aff'd *sub nom. Galvan v. Levine*, 490 *F.* 2d 1255, *supra*, convinces us that his reliance thereon is unfounded and does not support his attack upon the Law.

In the *Galvan* cases, *supra*, claimants challenged the constitutionality of New York Labor Law §591 subd. 2, *McKinney's Consol. Laws*, c. 31, denying unemployment benefits

---

[1]Administrative Instruction UIM–415 was rescinded as of May 1, 1974 by the Commissioner of Labor and Industry by a memorandum to the Director of the Division of Unemployment and Disability Insurance.

to a person "not ready, willing and able to work in his usual employment or in any other for which he is reasonably fitted by training and experience" as applied by the Industrial Commissioner of New York. The Commissioner had adopted a policy of denying benefits to a claimant who had left the labor market area in which he was last employed and had moved his residence to another labor market area lacking reasonable employment opportunities for one with his training and experience. Later the Commissioner implemented the policy by ruling that except for persons with occupational skills for which there was a particular demand at their destination, removal to an area of "high persistent unemployment" would establish ineligibility as a matter of law. The Commissioner defined an area of "high persistent unemployment" as one having a current unemployment rate of 12% or more. The claimants argued, among other things, the so-called "Twelve Percent Rule" (1) violated their constitutionally guaranteed right to travel; (2) was arbitrary and vague and thus violative of the Due Process Clause of the United States Constitution and (3) was applied in an arbitrary manner by the Commissioner to Puerto Rico, in violation of the United States Constitution. The Commissioner moved to dismiss the complaint. The three-judge United States District Court for the Southern District of New York found no basic constitutional infirmity in the Twelve Percent Rule. The court was concerned, however, with the claim that the rule had been applied by the Commissioner only to persons who moved to Puerto Rico. Accordingly, it granted the Commissioner's motion "in all respects save for plaintiffs' claim of discriminatory application of New York's policy * * *," and set a hearing on this limited question.

In disposing in part of claimants' constitutional challenge the court, in *Galvan v. Catherwood*, 324 *F. Supp.* 1016, at 1019, held:

Turning first to their contention that the policy in question violates their constitutionally guaranteed right to travel, plaintiffs un-

derstandably rely upon Shapiro v. Thompson, 394 U. S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969) wherein the Supreme Court condemned Connecticut's one-year residence requirement for public assistance. We do not deem it clear in the context of this case, however, that the unlimited right to travel out of the state as asserted by plaintiffs falls within the ambit of constitutional protection. The Court in *Shapiro* relied heavily on the fact that the restriction involved created an "invidious distinction" between residents of the state. In this case, plaintiffs concededly have left the state from time to time to take up residence in Puerto Rico; conceivably, the benefits or obligations owed by the State of New York to its former residents are not co-equal with those owed to its present residents. Indeed, it may be that New York is not constitutionally required to provide unemployment benefits for anyone who leaves the state.

In any event, the right to travel freely throughout the several states is not an absolute right. American citizens are "free to travel * * * uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." *Shapiro* at 629, 89 *S. Ct.* at 1329. In the case before us, the restriction involved is a minor one; claimants forfeit their rights only if they go to an area of such "high persistent unemployment" that they are deemed to have effectively isolated themselves from any possibility of reemployment. Furthermore, at least on the record before us, this limitation is reasonably and directly related to the long-standing and valid policy of the unemployment insurance provisions of New York law — e. g. that a claimant be "ready, willing and able to work". New York Labor Law § 591 (2). [at 1019]

Plaintiffs' second contention, that the standard is arbitrary and vague and thus violative of the due process clause of the Constitution, is without merit. The previously mentioned federal standard from *Area Trends* defines "persistent unemployment" with adequate precision; defendant's use of the higher figure, cutting off only those claimants who move to an area where the unemployment rate is over twelve percent, is likewise sufficiently precise. [at 1019]

Thereafter the parties stipulated that the three-judge court could decide the case on the cross-motions for summary judgment on the record, including documents and depositions. In addition to claiming that the Twelve Percent Rule was applied and administered in a discriminatory manner, claimant attacked the rule under Title VI of the Civil Rights Act of 1964, 42 *U. S. C. A.* § 2000d *et seq.* The court found that the Twelve Percent Rule had an effect clearly adverse to Puerto Rican Americans who traveled from New York to Puerto Rico seeking employment, and

that it had not been applied consistently or even substantially to claimants who had traveled from New York to other areas of the continental United States which might be regarded as areas of persistent high unemployment. In this regard the court found that while the Twelve Percent Rule was used in Puerto Rico, the "reasonable opportunity for work" standard was used in the continental United States. Accordingly, it held that the Twelve Percent Rule, as applied by the Commissioner to implement section 591 of the New York Labor Law, violated Title VI of the Civil Rights Act of 1968 and the Fourteenth Amendment of the United States Constitution. *Galvan v. Levine*, 345 *F. Supp.*, *supra*. The court expressly held that a nondiscriminatory application of the rule would not violate the Civil Rights Act of 1968 or the Fourteenth Amendment, stating:

* * * We emphasize, however that our holding does not forbid the state from implementing the twelve percent rule so long as it applies that policy evenly to claimants from each of the 50 states, the Commonwealth and the territories. * * * [345 *F. Supp.* at 74].

See also, *Wadlington v. Mindes*, 45 *Ill.* 2d 447, 259 *N. E.* 2d 257 (Sup. Ct. 1970), app. dism. 400 *U. S.* 935, 91 S. Ct. 252, 27 L. Ed. 2d 242 (1970).

Here, claimant failed to offer any evidence to support his charge of discrimination in the application of our law. In fact, there is nothing in the record below even suggesting discriminatory application of Administrative Instruction UIM–415, the so-called Twelve Percent Rule, with respect to claimant or others similarly situated who move to Puerto Rico. To the contrary, the Appeal Examiner observed below that The Interstate Unit in the Bureau of Unemployment Benefits has applied this "official policy" uniformly to claimants from each of the fifty states, commonwealth and territories. (BR–80665).

Furthermore, there was ample evidence in the record below to support the findings and conclusions of the Appeal Examiner that when claimant moved from Morris County,

New Jersey (where the employment rate was 4.9%), to Aguada, Puerto Rico (where the employment rate was 30.5%), he rendered himself unavailable for work within the meaning of our Unemployment Compensation Law. *N. J. S. A.* 43:21–4 in pertinent part provides:

> An unemployed individual shall be eligible to receive benefits with respect to any week only if it appears that:
> * * *
> (c) He is able to work, is available for work, and has demonstrated that he is actively seeking work * * *

The statutory requirement that the claimant be "available for work" is met if it appears that the claimant "is willing, able and ready to accept suitable work which he does not have good cause to refuse, that is when he is genuinely attached to the labor market." *Krauss v. A. & M. Karaghcusian,* 13 *N. J.* 447, 457–458 (1953); *Vasquez v. Bd. of Review, supra* 127 *N. J. Super.* at 434; *Valenti v. Board of Review,* 4 *N. J.* 287, 290 (1950). Our Supreme Court in *Krauss v. A. & M. Karagheusian, supra,* commented further on this requirement:

> However genuine the claimant's desire to be attached to the labor market, the availability test is not met unless there exists a labor market to which he may be attached, that is, it must appear that there is a substantial amount of work in the area for the skills he has to offer. *Valenti v. Board of Review, supra.* This does not mean that job vacancies must exist. "It means only that the type of services which an individual is offering is generally performed in the geographical area in which he is offering them." 55 *Yale L. J., p.* 124; *Valenti v. Board of Review, supra.* [13 N. J. at 460]

See also, *Campbell Soup Co. v. Bd. of Review,* 13 *N. J.* 431, 437–439 (1953); *Worsnop Bd. of Review,* 92 *N. J. Super.* 260, 264–265 (App. Div. 1966); *Tung-Sol Electric v. Bd. of Review,* 34 *N. J. Super.* 349, 351–53 (App. Div. 1955).

In *Vasquez v. Bd. of Review, supra,* we held that claimants were not available for work within the meaning of *N. J. S. A.* 43:21–4(c) when they moved from New Jersey

(where the unemployment rate for the area at the time was 6.8%) to areas in Puerto Rico (where the unemployment rate was 19% or in excess thereof), stating:

> *Krauss* speaks of the need for a substantial amount of work in the area for the skills the claimant has to offer. Obviously, if heavy unemployment exists in an area of persistent unemployment, a substantial amount of work cannot be available. Consequently, if a claimant moves from an area in which a job market exists to one in which there is a great deal of unemployment, he is not available for work within the meaning of the statute, and hence is ineligible for benefits. Here, the record establishes the claimants effectively removed themselves from the labor market and as a consequence thereof they were properly denied unemployment benefits. [127 N. J. Super. at 435]

Here, too, claimant effectively removed himself from the labor market when he returned to his home in Puerto Rico and was, therefore, properly denied unemployment compensation benefits.

Affirmed.