LORRAINE D. MENEWEATHER, Plaintiff-Appellant, v. THE BOARD OF REVIEW OF THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.

First District (5th Division)  No. 1—90—3632

Opinion filed July 17, 1992.

Karyn Glass and Joan Matlack, both of Legal Assistance Foundation of Chicago, of Chicago, for appellant.

Iris E. Sholder and Percival Harmon, both of Chicago, for appellees.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Lorraine Meneweather appeals from the decision of the circuit court which affirmed the Board of Review's (the Board's) determination that she was not entitled to unemployment compensation benefits due to her discharge for misconduct in connection with her employment as a probationary lunchroom attendant for the Chicago Public Schools (CPS). Meneweather contends that her alcoholism prevented her from acting "deliberately and wilfully" so as to have committed misconduct as defined by the Illinois Unemployment Insurance Act (Ill. Rev. Stat. 1989, ch. 48, par. 432(A)) or, alternatively, that she

was denied a full and fair administrative hearing as the hearing referee neglected to request evidence and document the record as to her alcoholic condition. For the reasons stated below, we reverse the decision of the circuit court.

Following are the pertinent facts. Meneweather worked as a lunchroom attendant for the CPS from October 24, 1984, until October 7, 1988, when she was fired for excessive tardiness and absenteeism. Meneweather was first put on notice that her job was in jeopardy in June 1988. The record contains no documentation of complaints regarding her attendance prior to this time. In June 1988, a disciplinary conference was held at which Meneweather disclosed her drinking problem. A three-day suspension ensued. Additionally, Meneweather was advised that Jerry Hodges, the drug counselor for the Board of Education, would be contacting her regarding her alcohol problem. This meeting did not occur until September. At that time Hodges did not advise Meneweather of the Board of Education's substance abuse program (the EAP program), but merely advised her to see her own doctor. The testimony adduced by the hearing officer indicated that Hodges would have referred Meneweather to the EAP program if she had initiated such a request. Meneweather testified that she did not know about the treatment program, and so did not ask Hodges about it. Thereafter, Meneweather set up an appointment with her own physician for October 6, 1988, at which time she was referred to an AA program which she completed at her own expense. On October 7, 1988, CPS decided to fire Menewather because of her excessive absenteeism and tardiness, although the CPS representative at the administrative hearing admitted that if Meneweather had entered an alcohol treatment program prior to her discharge, something could have been done to help her keep her job.

Soon after being fired, Meneweather applied for unemployment benefits. The claims adjudicator denied her claim after finding that Meneweather's discharge was for misconduct which was within her control.[1] Meneweather appealed that decision and appeared at the referee's hearing *pro se*. During that hearing she testified that she had completed an alcohol treatment program at her own expense, and fur-

---

[1] The applicable statutory authority provides as follows: "An individual shall be ineligible for benefits for the week in which he has been discharged for misconduct connected with his work ***. *** For purposes of this subsection, the term 'misconduct' means the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work ***." Ill. Rev. Stat. 1989, ch. 48, par. 432(A).

ther alleged that her alcohol problem had caused her to be late for work, at least on October 6, 1988. The referee made no findings regarding Meneweather's alleged alcoholism or whether her illness caused her tardiness.[2] He nonetheless affirmed the denial of benefits, holding that Meneweather's tardiness of October 6, 1988, "was a deliberate violation of employer rules *** [and that] it was the claimant's responsibility to resolve any personal problems."

With the assistance of counsel, Meneweather appealed from the referee's decision to the Board, contending that her alcoholism was a disease which in effect rendered her tardiness beyond her control and therefore negated the required "wilfullness" on claimant's part to establish misconduct. In affirming the referee's decision, the Board found that claimant had not established her alcoholic condition by competent medical evidence as required by Illinois law. In conclusion it cited a previous Board of Review decision (October 2, 1985), docket No. ABR–85–131–FE, in which it held that "when competent medical evidence establishes that an individual suffers from a disease, an individual's discharge, as a result of the effects of that disease, will not constitute a discharge for misconduct. The Unemployment Insurance Act does recognize alcoholism to be a disease."

The circuit court affirmed the decision of the Board as not contrary to law or to the manifest weight of the evidence.

On appeal, Meneweather argues as she did to the Board and the circuit court, that the decision to deny her unemployment compensation benefits was in error and should be reversed as she did not commit misconduct since her tardies and absences were due to alcoholism and were therefore beyond her control. Alternatively, Meneweather contends, as she did before the Board and the circuit court, that she was denied a full and fair evidentiary hearing by the referee at the administrative hearing. In this regard she requests a remand so that she may submit the additional required evidence.

---

[2]The referee did not fully develop whether drinking problems had accounted for all of Meneweather's tardies. The record, as documented, contains references to only five such instances, although the referee notes that there were occurrences before May 1988. The violations noted in the file are as follows:

"September 12, 1988: called in absent (cramps)
September 15, 1988: ten minutes late
September 19, 1988: fifteen minutes late
September 20, 1988: her mother and daughter waited for her to get off her job and she was going to leave her job with dirty dishes in the sink.
October 6: late arrived at 9:04 and starting time was 8:30."

■ On administrative review, we must determine whether the agency's decision is against the manifest weight of the evidence or contrary to law. (*Barron v. Ward* (1987), 165 Ill. App. 3d 653, 517 N.E.2d 591.) Although case law supports claimant's argument that the Unemployment Insurance Act (Ill. Rev. Stat. 1983, ch. 48, par. 300) is to be liberally construed in order to provide benefits to individuals to alleviate their economic distress that was caused by involuntary unemployment (*Popoff v. Department of Labor* (1986), 144 Ill. App. 3d 575, 494 N.E.2d 1266), and although claimant does submit case law both from Illinois and other jurisdictions indicating that alcoholism is a medically recognized disease, and that a person suffering from this disease may not have control of his own free will in order to deliberately commit the degree of misconduct which would serve to deprive him of unemployment compensation benefits, this does not alter the fact that the record before this court contains no medical evidence of claimant's alcoholism. Nor does it contain evidence linking claimant's absences and tardies to her alcoholic condition. Nor does it contain evidence indicating whether claimant was voluntarily able to control the behavior which led to her dismissal from employment. Because the record before us is so woefully lacking in pertinent information, we are unable to evaluate claimant's argument that she did not commit misconduct because the absences and tardies were due to alcoholism and were therefore beyond her control. A reversal on these grounds would therefore be inappropriate.

■ Meneweather's second argument, that she was denied a full and fair evidentiary hearing because the hearing referee failed to adequately develop the record, has more merit. The Illinois Unemployment Act requires that upon appeal of a determination of ineligibility, a "Referee *** shall afford the parties reasonable opportunity for a fair hearing." (Ill. Rev. Stat. 1989, ch. 48, par. 471.) A "fair hearing" entitles the claimant to a full and impartial hearing, and the conduct of the hearing must be in accordance with the fundamental rights of due process. (See *Flores v. Board of Review* (1979), 74 Ill. App. 3d 667, 393 N.E.2d 638.) As part of the referee's duty to afford a fair hearing, he must assure that the record in cases involving *pro se* parties is fully developed. The Illinois Department of Employment Security's (IDES's) own regulation mandates that a referee shall take an active role in developing the record to protect the claimant's right to a full and fair hearing:

> "Following the testimony of each witness, the witness may be *** questioned by the Referee, if necessary, to ensure clarity and completeness of the record. The Referee shall ensure that

the parties have full opportunity to present all evidence and testimony to the factual and/or legal issues on appeal." (56 Ill. Adm. Code §2720.245(c)(1985).) Although no Illinois case explicitly analyzes the extent of the referee's duty to solicit material evidence, Illinois courts have recognized that such a duty exists. In *Flores*, the court held that the referee had failed to develop a full record when he failed to ask a *pro se* claimant more than a few questions about his work search, and remanded the case finding that the referee had breached the duty to afford plaintiff an adequate opportunity to present evidence in support of her claim. The Board itself has held that the referee must investigate the relevant facts and develop the record. In one decision, the Department of Employment Security's Board of Review (July 16, 1985), docket No. 85—13RD—05334, held that the referee had failed to provide a full and fair hearing to a *pro se* claimant when he failed to contact a relevant witness; in another Board of Review decision (September 30, 1985), docket No. ABR—85—3858, it was found that the referee had failed to ask relevant questions regarding the employee's claims of retaliatory discharge, thus rendering the record inadequate. These cases indicate that the referee has an affirmative duty to ensure that a complete record is made.

■ In the case at bar, Meneweather had been discharged for absenteeism and tardiness. The record contained testimony regarding her drinking problem and the unsuccessful efforts of the Board of Education to provide her with counseling assistance. There was also Meneweather's own testimony regarding treatment by a private physician and the AA program. The combination of this evidence was, in our opinion, sufficient to trigger the referee's duty to participate in additional questioning and taking of evidence regarding the claimant's alleged alcoholic condition and her volitional capacity to commit the misconduct which resulted in the denial of unemployment compensation benefits.

For the aforementioned reasons, we reverse and remand to the circuit court with instructions to order the Board of Review to institute further proceedings consistent with the views expressed herein.

Reversed and remanded.

LORENZ and MURRAY, JJ., concur.