WALTER FIGUEROA, Plaintiff-Appellant, v. LYNN . DOHERTY, Director, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—97—2338

Opinion filed February 9, 1999.

RAKOWSKI, J., specially concurring.

Timothy Huizenga and Heather E. Ross, both of Legal Assistance Foundation, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Morton E. Friedman, Assistant Attorney General, of counsel), for appellees.

JUSTICE McNULTY delivered the opinion of the court:

St. Joseph Hospital and Home Health Care Center fired Walter Figueroa on January 22, 1996. A referee for the Illinois Department of Employment Security (IDES) denied Figueroa's claim for benefits. The Board of Review and the circuit court affirmed the referee's decision. Figueroa appeals.

Figueroa began working in the hospital's food service department in 1977. On January 15, 1996, Maria Sandoval, another hospital employee, called Figueroa at work. Figueroa left the department a few minutes later. A coworker, Tom Barliss, went to the supervisor, Ray Rees, to report that he saw Figueroa take some lemons from the refrigerator. Rees found Figueroa and Sandoval in the hallway. Sandoval held a bag of lemons. Rees notified security. The hospital fired Figueroa one week later.

Figueroa applied for unemployment benefits. The hospital faxed to the claims adjudicator a statement of its contention that Figueroa stole the lemons. Figueroa denied the charge. The hospital did not permit the adjudicator to contact Sandoval. The adjudicator ruled Figueroa eligible for benefits and the local office upheld the decision. On the hospital's appeal, the referee held a hearing *de novo*.

Figueroa, appearing without counsel, brought an interpreter to the hearing to translate the proceedings into Spanish for him. At the outset of the hearing the referee asked Figueroa four questions in English about his address and social security number. Figueroa responded "Yes" to all four questions. After introduction of the parties and swearing of the witnesses, including Figueroa, the referee said:[1]

"[Y]ou seem to understand what I am saying.

[Figueroa]: A little.

R[eferee]: A little yeah. Okay if you understand what's going on then just listen if you don't understand what there [sic] saying indicate to your interpreter that you don't understand it, and I will let you whisper in his ear. I don't want to go back and forth okay. We don't have the time for that. *** If there is any real problem we'll stop and let you go."

The hospital presented an affidavit from Barliss, who swore he saw Figueroa take "a handful" of lemons from the refrigerator. The affidavit does not clarify whether he saw whole lemons or lemon slices. Rees testified that when he found Figueroa and Sandoval in the hall he asked where she got the lemons. She said they were hers. He asked Figueroa where he put the lemons he took from the refrigerator.

---

[1]The record is so replete with grammatical and other errors that we simply reproduce parts of it as accurately as possible throughout this opinion.

Figueroa showed Rees a container holding 8 to 10 lemon wedges. The hospital's attorney asked Rees a series of questions to clarify the testimony and establish that taking lemons violated hospital rules.

The referee then asked the interpreter to ask whether Figueroa had any cross-examination for Rees. After a brief discussion in Spanish between Figueroa and the interpreter, the transcript shows the following:

> "R: He has no questions.
>
> INTERP: She asked a couple of questions, but he is not sure that she understood everything that is going on. So he INAUDIBLE.
>
> R: Okay you might just very briefly explain to him Mr. Rees has testified to the fact that there was a witness that saw him take out 5 lemons from the refrigerator and give them to another employee. *** Okay just briefly tell him what the jest [*sic*] of his testimony."

While Figueroa was still stating his question in Spanish, the hospital objected that he seemed to be testifying rather than questioning. The transcript shows that the interpreter answered:

> "He is saying ah that what based on what he could understand ah, there are several INAUDIBLE at this point of what Mr. Rees says that at one point he sold Mr. Figueroa 5 lemons, and INAUDIBLE there was a handful and another person ah, there was 5 or 6 left in a plastic bag. He is saying and wondering why he was able to count the lemons since they were inside a plastic bag.
>
> R: Alright that's his question.
> ***
>
> How were you able to count the lemons if they were in a bag?"

The referee asked no questions of either witness about Figueroa's statement that Rees had sold him the five lemons. Figueroa began his testimony in Spanish. The transcript shows the following:

> "R: Okay will you just say what he says.
>
> INTERP: Okay.
>
> R: And summarize it.
>
> INTERP: He says that ah, ah he received a phone call from a [S]panish speaking lady that they should name for it. Ah that she wants to see him because she asks him to go out for ride that day and that's why he went to see this [S]panish speaking lady. Mr. Rees has no proof whatsoever that he actually gave her any lemons."

Figueroa then presented a notarized document from Sandoval stating that Figueroa never sold or gave her any lemons. The interpreter added:

> "He said some other things but I don't know if I have to say them or not.
>
> R: Are they, you summarized them right?

INTERP: Okay in another words he says that the reason he took the lemons was because another person that he never mentioned in this problem his name Martha asked Mr. Figueroa for the lemons previously. She works in the preparation room and thats why he was in the area. Part of his work to deal with who prepares the salads and cuts lemons."

The referee asked no questions to clarify Figueroa's testimony. The hospital's attorney summarized the hospital's views and then the interpreter translated Figueroa's summary as follows:

"In anther words he is going back to the person saying that, that ah, the reason that he was there was because that's were he had worked for the last 17 years. He had a reason to be there. That was assignment area of work. INAUDIBLE and he is also wondering if they believe that every piece of food that comes out of the hospital is considered INAUDIBLE. Ah he believes that Mr. Rees doesn't know ah, the different customs of people. Spanish people have lemons with everything, with tea, with fish ah, it is a common thing for [S]panish people to take the lemons to work or bag of tea or anything else. So he agues that every piece of food INAUDIBLE.

*** [F]or 17 years he has never had a problem whatsoever ah, you know, in any manner and that he is not dumb enough to go and take 5 lemons ***.

Okay he is saying that at no time and there is not record of it security confronted Mr. Figueroa outside the cafeteria. He said he never took anything outside the hospital."

The referee sought no clarification of Figueroa's testimony or argument. Although Figueroa seemed to think he had been accused of entering an area where he did not belong, the referee did not clarify the charges for Figueroa or ask him any questions concerning his insistence that he belonged in the area where Rees met him. The referee found that Barliss saw Figueroa take five lemons from the refrigerator and Figueroa gave the lemons to Sandoval. The referee decided that this constituted unauthorized removal of hospital property, a kind of misconduct that disqualified Figueroa from receiving benefits.

Figueroa appealed from the referee's decision, arguing that the referee

"did not allow enough time to present my side of the case. The first thing that the Referee expressed was that he was running half an hour behind his scheduled."

After he filed the appeal, an attorney prepared a brief on Figueroa's behalf.

The Board of Review held that the "record adequately sets forth the evidence so that no further evidentiary proceedings are deemed necessary." The Board found that the hospital lost the use of five

lemons, so it affirmed the referee's decision. The circuit court upheld the findings and decision of the Board. The court found that the transcript of the hearing did not support Figueroa's argument that he needed an interpreter, so the interpreter's failure to translate all proceedings word for word did not deprive Figueroa of a fair hearing.

■ On appeal Figueroa again argues that the referee did not give him a fair hearing. IDES counters that Figueroa waived all due process claims by failing to raise them before the Board of Review. Figueroa, somewhat informally, described the inadequate procedures as a basis for his appeal to the Board. We find that Figueroa adequately preserved the issue. See *Balmoral Racing Club, Inc. v. Illinois Racing Board*, 151 Ill. 2d 367, 397, 603 N.E.2d 489 (1992). Moreover, "the general rule that an appellate court should confine itself to issues raised in earlier proceedings is not a rigid or inflexible one, and, where injustice might otherwise result, a reviewing court may consider questions of law not passed upon by an administrative agency." *Wadlington v. Mindes*, 45 Ill. 2d 447, 453, 259 N.E.2d 257 (1970). Figueroa's claims that IDES did not provide him a fair hearing warrant consideration even if he has waived them.

■ The Unemployment Insurance Act provides that a "Referee *** shall afford the parties reasonable opportunity for a fair hearing." 820 ILCS 405/801A (West 1996). The hearing must accord with fundamental principles of due process. *Flores v. Board of Review*, 74 Ill. App. 3d 667, 670, 393 N.E.2d 638 (1979). Fundamental due process rights may require a court to permit an interpreter to translate courtroom proceedings. "This is so because inherent in [the] nature of justice is the notion that those involved in litigation should understand and be understood." 75 Am. Jur. 2d *Trial* § 230 (1991).

In *United States ex rel. Negron v. New York*, 434 F.2d 386 (2d Cir. 1970), the court held:

> "Considerations of fairness, the integrity of the fact-finding process, and the potency of our adversary system of justice forbid that the state should prosecute a defendant who is not present at his own trial [citation], unless by his conduct he waives that right. [Citation.] And it is equally imperative that every criminal defendant—if the right to be present is to have meaning—possess 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.' [Citation.] Otherwise, '[t]he adjudication loses its character as a reasoned interaction *** and becomes an invective against an insensible object.' [Citation.]
>
> *** Not only for the sake of effective cross-examination, however, but as a matter of simple humaneness, [a defendant] deserve[s] more than to sit in total incomprehension as the trial proceed[s]." *Negron*, 434 F.2d at 389-90.

See *People v. Escalante*, 256 Ill. App. 3d 239, 245-46, 627 N.E.2d 1222 (1994).

■ Here, the referee permitted an interpreter to accompany Figueroa, although Figueroa appeared to understand some English. Because the referee did not want to spend the time required for full translation, he specifically directed the interpreter to translate, by whispering in Figueroa's ear during the testimony, only when Figueroa had a specific question about the testimony. The referee told the interpreter to summarize Figueroa's testimony, rather than translate it word for word. And the referee directed the interpreter to translate for Figueroa a specific, one-sentence summary of Rees' testimony. Rees' testimony takes up 7 pages out of the 15-page transcript of the entire hearing.

Although Figueroa answered some questions in English, the questions were simple and none of Figueroa's answers showed any facility with English. Figueroa's extended discussions with the interpreter demonstrate that he is far more capable of understanding and expressing himself in Spanish.

In *People v. Starling*, 21 Ill. App. 3d 217, 315 N.E.2d 163 (1974), the trial court appointed an interpreter to translate the testimony of the complaining witness from Spanish into English. The defendant objected to the interpreter's summarizing of the testimony without a verbatim translation. The appellate court held:

> "It is obvious the interpreter was not fully, completely or accurately translating the questions and answers. When an interpreter is employed, that practice must be strictly followed; otherwise the possibility of editing, and error, rests solely with the interpreter. Due process rights of persons charged with crimes cannot be shortcut by avoiding the ritual of translating each question and answer ***." *Starling*, 21 Ill. App. 3d at 222.

Similarly, in *People v. Alfaro*, 227 Ill. App. 3d 281, 592 N.E.2d 1117 (1992), the defendant alleged that the interpreter provided only synopses of the testimony. The appellate court remanded for hearing on the allegations, because a failure to provide a full translation of proceedings "go[es] to the heart of constitutional due process of law." *Alfaro*, 227 Ill. App. 3d at 285. Thus, even reasonably accurate summaries of testimony do not suffice to protect a litigant's due process rights. See *Negron*, 434 F.2d at 389-90.

The summary of the testimony the referee instructed the interpreter to translate is more egregious than the summaries involved in *Starling* and *Negron*, because the summary here is wrong. The referee told Figueroa, through the translator, that a witness saw him take five lemons from the refrigerator and give them to an employee.

Barliss swore he saw Figueroa take "a handful" of lemons. The referee, like Rees, may have interpreted the number taken as five because that is the number of lemons Sandoval held. More importantly, no one saw Figueroa hand anything to Sandoval. The incorrect summary left Figueroa thinking he needed to rebut evidence not presented.

The referee also instructed the interpreter not to translate Figueroa's testimony word for word, but to provide only a summary. The instruction effectively denied Figueroa the right to testify on his own behalf. See *Commonwealth v. Pana*, 469 Pa. 43, 49, 364 A.2d 895, 898 (1976).

Finally, "[a]s part of the referee's duty to afford a fair hearing, he must assure that the record in cases involving *pro se* parties is fully developed." *Meneweather v. Board of Review of the Department of Employment Security*, 249 Ill. App. 3d 980, 984, 621 N.E.2d 22 (1992). The referee has a duty to ascertain all pertinent facts surrounding a claim, and he breaches that duty if he fails to ask a *pro se* claimant questions needed to clarify and complete the statement of the claimant's position. *Flores*, 74 Ill. App. 3d at 672; *Meneweather*, 249 Ill. App. 3d at 985. Here, as in *Meneweather*, the referee failed to develop the record fully, as the record contains only a nearly indecipherable statement of Figueroa's argument, and the referee asked no questions and made no effort to clarify the testimony.

The failure to provide a complete translation of all proceedings deprived Figueroa of his right to a fair hearing that he understood and at which he would be understood. See *Golden Egg Club, Inc. v. Illinois Liquor Control Comm'n*, 124 Ill. App. 2d 241, 244-45, 260 N.E.2d 329 (1970). That failure became more egregiously prejudicial when the referee instructed the interpreter to translate for Figueroa a not merely incomplete, but also highly inaccurate, summary of the evidence against him. The referee further breached his duties by failing to fully develop Figueroa's position in a clear, comprehensible record. In view of the largely incomprehensible record, we elect not to decide what results may be permissible in hypothetical factual situations. Although "a court may simply reverse the agency" in appropriate circumstances, "[w]here the record of the hearing is clearly inadequate, the case should be remanded to the agency." *Sye v. Wood Dale Fire Protection District No. 1*, 43 Ill. App. 3d 48, 52, 356 N.E.2d 938 (1976). The case

is remanded for rehearing before a referee who will provide a fair hearing for Figueroa's claim.

Reversed and remanded.

GORDON, P.J., concurs.

JUSTICE RAKOWSKI, specially concurring:

I agree that Figueroa was denied a full and impartial hearing. I write separately to express my belief that Figueroa's second issue should also be addressed.

Figueroa has raised two issues in this appeal:

1. Whether Figueroa was denied a full and impartial hearing; and

2. Whether Figueroa's alleged conduct harmed the employer within the meaning of section 602(A) of the Unemployment Insurance Act (820 ILCS 405/602(A) (West 1996)).

As I stated, I agree with the majority with respect to issue one.

I respectfully submit that we should also address issue two, where Figueroa contends that the *alleged* act of stealing five lemons does not constitute harm within the meaning of section 602(A). Although we cannot answer the fact question of whether he stole the lemons, we can determine whether this alleged act constitutes harm. Because no facts are in dispute, it is a question of law.

The majority elects not to decide this issue, referring to it as a hypothetical fact situation. Although it is hypothetical in nature, it may be the dispositive issue in this case. Figueroa is contending that assuming the employer's claims are true, that he stole the lemons, he is nevertheless entitled to benefits because stealing five lemons is not harm to the employer as a matter of law. If Figueroa is correct in his contention, he prevails outright. There would be no need to remand. If he is incorrect, only a fact question would remain.

I respectfully submit that we should address this issue.