# Illinois Official Reports

## Appellate Court

---

### *Leach v. Department of Employment Security*, 2020 IL App (1st) 190299

---

| | |
|---|---|
| Appellate Court Caption | TRACYIE D. LEACH, Plaintiff-Appellee, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, an Administrative Agency in the State of Illinois; THE DIRECTOR OF EMPLOYMENT SECURITY; THE BOARD OF REVIEW OF THE DEPARTMENT OF EMPLOYMENT SECURITY, an Administrative Agency in the State of Illinois; and HAWTHORNE RACE COURSE, INC., Employer, Defendants (The Department of Employment Security, The Director of Employment Security, and The Board of Review of the Department of Employment Security, Defendants-Appellants). |
| District & No. | First District, Fourth Division<br>No. 1-19-0299 |
| Filed | February 27, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-L-50589; the Hon. Michael F. Otto, Judge, presiding. |
| Judgment | Circuit court judgment reversed; Board decision affirmed. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellants.<br><br>No brief filed for appellee. |

JUSTICE BURKE delivered the judgment of the court, with opinion. Justices Lampkin and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiff, Tracyie D. Leach, worked as a security guard for Hawthorne Race Course, Inc. (Hawthorne), from August 2007 through May 2018. In May 2018, Leach applied for unemployment benefits. After telephone hearings before a claims adjustor for the Department of Employment Security (Department) and an administrative law judge (referee), the Board of Review of the Department of Employment Security (Board) denied Leach's claim for benefits on the basis that he was not actively seeking work. Leach filed a complaint for administrative review of the Board's decision in the circuit court. The circuit court found that the Department had denied Leach due process in reviewing his claim and, therefore, reversed the Board's judgment and awarded Leach unemployment benefits. The Board now appeals, arguing that its decision was not clearly erroneous and that the circuit court erred in finding that it denied Leach due process. For the reasons that follow, we reverse the judgment of the circuit court and affirm the Board's decision.

¶ 2                              I. BACKGROUND
¶ 3      The record shows that on May 15, 2018, Leach filed a claim for unemployment benefits with the Department. Leach indicated that his reason for separation from his employment was "Laid-Off (Lack of Work)." Two days later, the Department sent Leach a notice entitled "Important Notice Concerning Unemployment Benefits." The notice informed Leach that in order to be eligible for employment benefits, he was required to register for work with the Illinois Employment Service through the Illinois Job Link. The notice provided that "*[y]our registration will be considered complete when you create or upload at least one resume.*" (Emphasis in original.) The notice further informed Leach that if he did not complete the registration by May 29, 2018, he would be ineligible for unemployment insurance benefits.

¶ 4      Hawthorne filed a written protest to Leach's claim for benefits, contending that Leach was not laid off due to lack of work but that Leach had requested a leave of absence. Hawthorne stated that Leach was free to return to work whenever he was available and that "his return would be welcomed" because Hawthorne was short on staff. Hawthorne attached to its written protest an e-mail from a Hawthorne employee in which the employee indicated that Leach "requested a few months off due to work related outside interests." The employee explained that Leach asked to be off work through the summer and did not provide a time frame for his return to work.

¶ 5      On May 22, 2018, the Department sent Leach a "Notice of Interview." The notice informed Leach that a question had been raised regarding his eligibility for unemployment benefits. The notice further provided that "[p]rior to your interview, please provide your work search records since your last day worked and/or any documentation that may demonstrate your ability to work. To resolve this question, an interview will be necessary for you to supply information regarding [section] 500C [*sic*] Able and Available" of the Unemployment Insurance Act (Act) (820 ILCS 405/500(C) (West 2016)). The notice informed Leach that the Department would contact him by telephone at 2 p.m. on June 4, 2018, and that he should be prepared to present

any information he had regarding his case. The notice further provided that Leach's failure to participate in the scheduled interview would result in a denial of benefits. Attached to the notice was a form Leach could submit to reschedule the interview if he was not available at the scheduled time.

¶ 6 A claims adjudicator attempted to contact Leach at 2:02 p.m. on June 4, 2018, but Leach did not answer the phone. The claims adjudicator's notes indicate that Leach's phone "rang twice and went into rapid busy signal." The claims adjudicator attempted to contact Leach again at 2:16 p.m. but was unable to reach him. The claims adjudicator spoke with an agent for Hawthorne who again indicated that Leach was not terminated but requested a leave of absence for the summer and did not provide a return date. The agent indicated that Hawthorne was very busy and would "love to have [Leach] back working with us."

¶ 7 The claims adjudicator sent Leach a determination the following day in which the claims adjudicator found that Leach was not eligible for unemployment benefits because he requested a leave of absence for the summer. Leach requested reconsideration of the claims adjudicator's determination or an appeal. The Department sent Leach a notice informing him that an appeal would be scheduled with a Department referee. The notice informed Leach that he would have the opportunity to present evidence at the hearing. The notice reiterated the claims adjudicator's determination that Leach was denied benefits because he failed to demonstrate that he was able and available for work as described in section 500(C) of the Act and sections 2865.105 and 2865.110 of the Labor and Employment title of the Illinois Administrative Code (Code) (56 Ill. Adm. Code 2865.105, 2865.110, adopted at 14 Ill. Reg. 18466 (eff. Nov. 5, 1990)). The Department subsequently sent Leach a notice of a telephone hearing to be conducted by a referee on June 28, 2018. The notice provided that the issues to be considered at the hearing were, *inter alia*, whether Leach was "able to work, available for work or was actively seeking suitable work during the period in question." The notice directed Leach to section 500(C) of the Act and sections 2720.112, 2865.105, 2865.110, and 2865.115 of Title 56 of the Code.

¶ 8 The referee was unable to reach Hawthorne for the telephone hearing and thus conducted the hearing with only Leach present. At the hearing, Leach testified that he started working at Hawthorne in August 2008 as a security guard. His last day was in May 2018. Leach testified that he was involuntarily removed from the schedule and did not request to have the summer off as Hawthorne represented. He testified that he only asked to have weekends off but was available Monday through Friday. The referee asked Leach if he had spoken to anyone at Hawthorne regarding getting his job back because Hawthorne had indicated that it would welcome his return. Leach responded that he talked to Hawthorne about a raise and an increase in his hours, but he did not talk to them about returning to work. He also testified that Hawthorne "never talked to me about actually giving me the raises." He denied requesting a leave of absence but testified that he asked for weekends off because his daughter was starting college and it was easier for him to visit her on weekends.

¶ 9 Leach testified that he was looking for another job and kept track of "some of the places" he applied to online. He acknowledged, however, that he had not been keeping an "actual record." He testified that he applied for employment at McDonald's and IHOP and a "few other places." Leach testified that he registered with the Illinois Job Link service and was available for any work shift outside of the weekends.

¶ 10 At the conclusion of the hearing, the referee asked Leach if he had anything else to tell him regarding his availability for work or his ability to work, and Leach responded that he had nothing else to say. As the referee was about to close the hearing, Leach indicated that he had one thing he wanted to add. Leach testified that he was not getting enough hours at Hawthorne and they refused to schedule him for more hours despite his request for more hours.

¶ 11 The referee subsequently issued a decision in which he found that Leach had requested a reduction in his work hours due to family matters. The referee also found that Leach did not keep a work search record and could recall only one job contact per week. The referee found that Leach's efforts to seek work were "meager and perfunctory at best" and that he "managed to accomplish in weeks what he should have accomplished in one day." The referee found that Leach did not meet the work search requirement of section 500(C) of the Act and, therefore, was not eligible for benefits.

¶ 12 Leach appealed the referee's decision to the Board. In his appeal, Leach asserted that he requested a change to his schedule with Hawthorne but was entirely removed from the work schedule against his will. He maintained that he had been actively seeking work, but during the hearing before the referee he did not have a list of his work search history because he was not aware that he needed to have that information available.

¶ 13 In August 2018, the Board issued its decision without conducting a further hearing, finding that the record adequately set forth the evidence. The Board found that Leach was "separated from employment" when he requested weekends off to spend time with his daughter. The Board found that Leach did not keep a written job search and did not submit a written job search record for the hearing before the referee. The Board found that based on his testimony, Leach made three job contacts in a four-week span. The Board further found that although Leach testified he had registered on the Illinois Job Link website, the website's records on the date of the Board's decision reflected that Leach had failed to successfully register because he did not submit a resume.

¶ 14 The Board found that the preponderance of the evidence established that Leach was able and available for work but was not actively seeking work. The Board based this decision on the fact that Leach did not keep a written job search record, did not recall more than three places he applied to work in a four-week period, and did not register with Illinois Job Link. Accordingly, the Board found that Leach was ineligible for benefits.

¶ 15 Leach filed a *pro se* complaint for administrative review of the Board's decision in the circuit court of Cook County. The Department filed an answer consisting of the record of the administrative proceedings. Based on these pleadings, the circuit court found that the proceedings before the Department "failed to conform to due process." The circuit court noted that the claims adjudicator denied Leach benefits after she failed to contact Leach by telephone after "apparently [a] single attempt." The court further found that during the telephone hearing before the referee, the referee "cross-examined [Leach] in an exceedingly hostile fashion, cut off his attempts to explain events or develop the record, adopted wholesale the version of events put forth by the non-participating Employer, and denied benefits due to [Leach's] lack of evidence of a job search." The court found that the issue of Leach's job search was "completely unrelated" to the claims adjudicator's decision and, thus, Leach "had no reason to anticipate he would need to be prepared to discuss it."

¶ 16 The circuit court further found that the Board then affirmed the referee's decision without even addressing Leach's objection that the referee's decision "hinged on a surprise issue." The

court also found that the Board improperly conducted its own fact-finding when it determined that Leach had failed to register with the Illinois Job Link website. The court determined that the Board "inappropriately circumvented" the traditional adversarial process by engaging in this "*ex parte* fact-finding" to seek out evidence to benefit Hawthorne.

¶ 17 The court found that although the Act and the Code provide that an unemployed individual's receipt of benefits may be conditioned upon a showing that the individual is actively seeking work and a certification of such, the court determined that the provisions of the Act and the Code do not address the use of work search history records at a Department hearing and do not address the manner in which the certification is to take place. The court found that the Act also "says nothing about a claimant having to be prepared to produce his or her job search history during a hearing." The court concluded that the proceedings before the Department denied Leach due process. The court therefore reversed the decision of the Board and determined that because Leach was denied due process, the appropriate remedy was "full reinstatement of all benefits that were denied as a result of the flawed hearing and subsequent Board decision." The court summarily denied the Department's motion to reconsider that ruling. The Department now appeals.

¶ 18                                            II. ANALYSIS

¶ 19 On appeal, the Department contends that the Board's determination that Leach was not actively seeking work during the period in question was not clearly erroneous. The Department asserts that the Act and the Code define the criteria for whether an individual is actively seeking work and the testimony adduced at the hearing before the referee showed that Leach failed to demonstrate that he was actively seeking work. The Department also contends that the circuit court erroneously determined that the Department denied Leach due process in the administrative proceedings. The Department asserts that the circuit court's ruling was based on a misunderstanding of the proceedings and the court improperly reversed the Board's decision and awarded Leach benefits.

¶ 20                                      A. Standard of Review

¶ 21 We initially note that Leach, as the appellee, has not filed a brief before this court. We will nonetheless decide the merits of this appeal because we can decide the claimed errors without the aid of an appellee's brief. See *State Farm Mutual Insurance Co. v. Ellison*, 354 Ill. App. 3d 387, 388 (2004); see also *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 22 On appeal, we review the decision of the Board and not that of the circuit court, the referee, or the claims adjudicator. *Universal Security Corp. v. Department of Employment Security*, 2015 IL App (1st) 133886, ¶ 12. The degree of deference we afford to an administrative agency's decision depends on whether the question involved is one of fact, law, or a mixed question of fact and law. *Id.* The Board's factual findings and conclusions are deemed *prima facie* true and correct and will be reversed only if they are against the manifest weight of the evidence. *Persaud v. Department of Employment Security*, 2019 IL App (1st) 180964, ¶ 14. However, we review *de novo* the Board's legal determinations. *Id.* ¶ 15. Mixed questions of fact and law, those where the historical facts are admitted or established and the only question is whether the facts satisfy the statutory standard, are subject to reversal only where they are clearly erroneous. *Id.* ¶ 16. A decision is clearly erroneous " 'when the reviewing court

- 5 -

is left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577-78 (2005)). Here, the Board found that Leach was ineligible for benefits because he was not actively seeking work during the time period for which he sought to claim benefits. Whether Leach was actively seeking work during the period in question is a mixed question of fact and law, which we review under the clearly erroneous standard. *Stein v. Department of Employment Security*, 2017 IL App (3d) 160335, ¶ 17 (citing *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 21).

¶ 23                                    B. Actively Seeking Work

¶ 24        Section 500(C) of the Act provides, *inter alia*, that an unemployed individual shall be eligible to receive benefits only if he is found to be able to work and available for work

> "provided that during the period in question he was actively seeking work and he has certified as such. Whenever requested to do so by the Director, the individual shall, in the manner the Director prescribes by regulation, inform the Department of the places at which he has sought work during the period in question." 820 ILCS 405/500(C) (West 2018).

The Act does not define "actively seeking work," but the Department has defined it in section 2865.115 of Title 56 of the Code:

> "An individual is actively seeking work when he makes an effort that is reasonably calculated to return him to the labor force. Reasonableness is determined by factors including, but not limited to: the individual's physical and mental abilities, his training and experience, the employment opportunities in the area, the length of unemployment, and the nature and number of work search efforts in light of the customary means of obtaining work in the occupation." 56 Ill. Adm. Code 2865.115(a), amended at 17 Ill. Reg. 17917 (eff. Oct. 4, 1993).

The Code further provides that in order to establish that an individual is actively seeking work, he must register with the Illinois Employment Service. 56 Ill. Adm. Code 2865.100(a)(1), amended at 35 Ill. Reg. 6154 (eff. Mar. 25, 2011). The "claimant must [also] show that he or she is conducting a thorough, active and reasonable search for appropriate work on his or her own by keeping records of what he or she is doing to find work." 56 Ill. Adm. Code 2865.100(a)(2), amended at 35 Ill. Reg. 6154 (eff. Mar. 25, 2011). This record should include the names and addresses of the employing units contacted; the dates, methods, and results of the contacts; the types of work the claimant is seeking; and any other information regarding the claimant's work search efforts. 56 Ill. Adm. Code 2865.100(a)(2)(A)-(D), amended at 35 Ill. Reg. 6154 (eff. Mar. 25, 2011). The claimant shall provide these written records to the Department whenever requested or when the claimant's work search is an issue in a claims adjudicator interview, an appeal, or a hearing. 56 Ill. Adm. Code 2865.100(b), amended at 35 Ill. Reg. 6154 (eff. Mar. 25, 2011).

¶ 25        Here, prior to the telephone interview with the claims adjudicator, the Department sent a notice to Leach in which it informed him that his work search would be at issue and asked him to provide his "work search records since your last day worked and/or any documentation that may demonstrate your ability to work." Leach did not participate in the interview before the claims adjudicator and, accordingly, the claims adjudicator found him ineligible for benefits. Leach requested reconsideration of the claims adjudicator's determination or an appeal before

- 6 -

a Department referee. Prior to his appeal hearing before the referee, the Department again sent Leach a notice informing him that the issues to be considered at the hearing were, *inter alia*, whether Leach was "able to work, available for work or was *actively seeking suitable work during the period in question*." (Emphasis added.) The notice directed Leach to section 500(C) of the Act and sections 2720.112, 2865.105, 2865.110, and 2865.115 of Title 56 of the Code.

¶ 26    Thus, prior to both hearings, Leach was adequately on notice that his work search was at issue. As such, pursuant to section 500(C) of the Act and sections 2865.100, 2865.105, 2865.110, and 2865.115 of Title 56 of the Code, Leach was required to provide a written work search record consisting of the names and addresses of the employing units contacted; the dates, methods, and results of the contacts; the type of work he was seeking; and any other information regarding his work search efforts. However, Leach did not submit written work search records to the Department. When the referee asked Leach about his work search records at the hearing, Leach responded:

> "Okay, I applied for IHOP [*sic*] May around the 17th. You know what I'm saying? I applied for IHOP around say May 24th and June, around June. . . in June, still, I applied for, um. . . let's, uh. . . let's see. One second. I believe I applied for that McDonald's job on Chicago Avenue for (inaudible). And, you know, a couple other places that I didn't actually probably write down. But, you know, I've been actually looking for work. I'm always looking for work."

The Board determined that Leach's failure to keep a written job search record, his minimal job contacts, and his failure to register with the Illinois Job Link demonstrated that he was not actively seeking work during the benefit period in question. We cannot say that such a decision was clearly erroneous.

¶ 27    Setting aside Leach's failure to comply with the written job search record requirement, he could identify only two employers he contacted in a four-week period. In determining whether an individual is actively seeking work, the Department considers both the quality of the claimant's efforts as well as the quantity of job contacts. 56 Ill. Adm. Code 2865.115(f), amended at 17 Ill. Reg. 17917 (eff. Oct. 4, 1993). The Code includes the following example, which is pertinent to the case at bar:

> "The individual seeks work as a retail sales clerk. On a Monday morning, she visits a shopping mall, where she applies for work at seven stores and is rejected by each. For the rest of the week, she makes no effort to find work. This individual would be determined to be not actively seeking work, despite having made seven job contacts in one day." 56 Ill. Adm. Code 2865.115(f)(1), amended at 17 Ill. Reg. 17917 (eff. Oct. 4, 1993).

Here, Leach's job search was less active than the job search found to be inadequate in the example in the Code. The record shows that Leach could recall only two employers he contacted in a four-week period, and even accepting his testimony that he sought employment at a "couple other places," his job search would still be inadequate. Furthermore, the record shows that Leach was employed as a security guard at Hawthorne. Leach did not specify whether the positions he sought were reasonable given his work history, his abilities, or his training and experience. 56 Ill. Adm. Code 2865.115(a), amended at 17 Ill. Reg. 17917 (eff. Oct. 4, 1993). As such, we cannot say that the Board's determination that Leach was not actively seeking employment was clearly erroneous.

¶ 28                                    C. Due Process

¶ 29        We next must address the circuit court's determination that the administrative proceedings in this case denied Leach due process. We recognize, as noted, that our purview on appeal is to review the decision of the Board, not the circuit court. *Universal Security Corp.*, 2015 IL App (1st) 133886, ¶ 12. Nonetheless, we also recognize that we have a duty to examine the proceedings at an administrative hearing to ensure that the proceedings were fair and impartial. *Matlock v. Illinois Department of Employment Security*, 2019 IL App (1st) 180645, ¶ 27. Here, the circuit court's determination that the Department denied Leach a fair and impartial hearing was based on three main factors. First, the court found that Leach's job search was a "surprise issue" and he had no reason to expect that he had to be prepared to discuss it at the hearing. Second, the court determined that, during the hearing, the referee was "exceedingly hostile" toward Leach and thwarted his efforts to develop the record, choosing instead to adopt Hawthorne's version of the events. Finally, the court found that the Board engaged in improper *ex parte* fact-finding when it determined that Leach had failed to register for the Illinois Job Link website.

¶ 30                                1. *Leach's Job Search*

¶ 31        Contrary to the circuit court's ruling, Leach's job search cannot be said to have been a "surprise issue." As noted, prior to the telephone interview with the claims adjudicator, the Department sent a notice to Leach in which it informed him that his work search would be at issue and asked him to provide his "work search records since your last day worked and/or any documentation that may demonstrate your ability to work." Similarly, prior to his appeal hearing before the referee, the Department again sent Leach a notice informing him that the issues to be considered at the hearing were, *inter alia*, whether Leach was "able to work, available for work or was *actively seeking suitable work during the period in question*." (Emphasis added.) The notice directed Leach to section 500(C) of the Act and sections 2720.112, 2865.105, 2865.110, and 2865.115 of Title 56 of the Code. As discussed above, these sections, in conjunction with section 2865.100 of Title 56 of the Code, explain how the Department determines whether an individual is actively seeking work.

¶ 32        Although, as the circuit court pointed out, whether Leach was actively seeking work was unrelated to the claims adjudicator's decision, Leach did not participate in that hearing, and thus, the question of whether he was actively seeking work was never addressed. The only information that the claims adjudicator had at the time of her determination was information from Hawthorne that Leach had voluntarily requested a leave of absence from work. The claims adjudicator was justified in denying Leach benefits on that basis alone without consideration for whether he was actively seeking work. In Leach's subsequent appeals, however, in addition to showing that he was able and available to work and had not requested a leave of absence as Hawthorne suggested, he was also required to show that he was actively seeking work. See 820 ILCS 405/500(C) (West 2018) ("[a]n unemployed individual shall be eligible to receive benefits with respect to any week only if the Director finds that" "[h]e is able to work, and is available for work; *provided that during the period in question he was actively seeking work and he has certified such*" (emphasis added)). The claims adjudicator's decision on a different basis did not absolve him of that obligation.

¶ 33        We also note that the circuit court took issue with the fact that the claims adjudicator attempted to contact Leach only a single time before denying him benefits based on the

testimony of Hawthorne that Leach had requested a leave of absence. The record shows, however, that the claims adjudicator attempted to contact Leach twice, once at 2:02 p.m. and once at 2:16 p.m. Leach failed to respond on both occasions. In the notice for the telephone interview, which was issued to Leach nearly two weeks before the interview date, the Department included a form where Leach could request to change the interview date and time if he would be unavailable at the scheduled time. Leach did not submit the form or otherwise indicate that he was not available at the scheduled time. Finally, the notice provided that "[f]ailure to participate in the scheduled interview at the date and time listed above will result in a denial of benefits." Accordingly, we find no denial of due process stemming from the claims adjudicator's denial of benefits.

¶ 34        The circuit court also criticized the Board's ruling, finding that section 500(C) of the Act is "silent" on the manner in which a claimant may certify that he is actively seeking work. The court also found that neither the Act nor the Code provide that a claimant has to be prepared to produce his job search history during a hearing. We respectfully disagree with the circuit court's interpretation of the provisions of the Act and the Code. As noted, section 500(C) provides that "[w]henever requested to do so by the Director, the individual shall, *in the manner the Director prescribes by regulation*, inform the Department of the places at which he has sought work during the period in question." (Emphasis added.) *Id.* Turning to the Code, the regulations set out by the Director, the "claimant must show that he or she is conducting a thorough, active and reasonable search for appropriate work on his or her own by keeping records of what he or she is doing to find work." 56 Ill. Adm. Code 2865.100(a)(2), amended at 35 Ill. Reg. 6154 (eff. Mar. 25, 2011). This record includes records of the names and addresses of the employing units contacted; the dates, methods, and results of the contacts; the types of work the claimant is seeking; and any other information regarding the claimant's work search efforts. 56 Ill. Adm. Code 2865.100(a)(2)(A)-(D), amended at 35 Ill. Reg. 6154 (eff. Mar. 25, 2011). The claimant shall provide these written records to the Department whenever requested or when the claimant's work search is an issue in a claims adjudicator interview, an appeal, or a hearing. 56 Ill. Adm. Code 2865.100(b), amended at 35 Ill. Reg. 6154 (eff. Mar. 25, 2011). Here, the notices sent to Leach before the interview with the claims adjudicator and the interview with the referee both indicated that Leach's job search was at issue and that he should be prepared to address that issue. The Act, in conjunction with the Code, adequately describe what information Leach had to submit to fulfill this requirement, and the notices, along with the Code and the Act, put Leach on notice that these topics would be discussed at the hearings. Leach did not provide a written job search record, and his testimony regarding his work search was inadequate to satisfy the requirements set out in the Code. Accordingly, we find no denial of due process stemming from the Board's determination that Leach failed to adequately demonstrate that he was actively seeking work.

¶ 35                              *2. The Referee's Conduct*

¶ 36        The circuit court next chastised the referee's conduct during the hearing. The court stated that the referee's conduct "could charitably be described as contentious" and "verged into outright hostility with no apparent provocation." The court found that the referee essentially acted as an advocate for Hawthorne and "cross-examined [Leach] in an exceedingly hostile fashion."

¶ 37    The Act requires that upon appeal of a determination of ineligibility, a "[r]eferee *** shall afford the parties reasonable opportunity for a fair hearing." 820 ILCS 405/801(A) (West 2018). "A 'fair hearing' entitles the claimant to a full and impartial hearing, and the conduct of the hearing must be in accordance with the fundamental rights of due process." *Meneweather v. Board of Review of the Department of Employment Security*, 249 Ill. App. 3d 980, 984 (1992) (citing *Flores v. Board of Review*, 74 Ill. App. 3d 667 (1979)). The referee has a responsibility to investigate relevant facts and develop the record. *Id.* at 984-85.

¶ 38    The circuit court identified three exchanges during the hearing that it asserts demonstrated the referee's improper behavior. The first such exchange occurred at the very beginning of the hearing when the referee was attempting to determine whether Leach worked full-time or part-time for Hawthorne.

> "[REFEREE (R)]: Were you part-time or full-time?
>
> [CLAIMANT (CL)]: Uh, that's debatable because I was supposed…
>
> R: Sir, it's not debatable.
>
> CL: Sorry. I was…
>
> R. Either (inaudible)…
>
> CL: … supposed to be… I was supposed to be full-time…
>
> R. Did you work 40 hours or not?
>
> CL: No, I… no, I never got to work…
>
> R. Okay.
>
> CL. … 40 hours.
>
> R. Okay. That's part-time then. Who did you report to?"

The next exchange occurred a short time later when the referee asked Leach if he had ever inquired about returning to work with Hawthorne.

> "R: [Hawthorne] also say[s] that Mr. Leach is free to return to work whenever he is available. We are short on staff and his return would be welcomed. Have you talked to somebody about going back to work?
>
> CL: Actually… actually, when I talked to someone, I talked to them, well, about a raise increase and about my hours being… about my hours being increased.
>
> R: Alright.
>
> CL: They never talked to me about hiring me back to work. They never talked to me about actually giving me the raises that was never… never given to me and due to me, you know what I'm saying? So we…
>
> R: Sir?
>
> CL: … never… it's…
>
> R: That answered a bunch of questions, but not the one I asked you.
>
> CL: Okay. Well, no, I never…
>
> R: I'm not (inaudible)…
>
> CL: … talked to anyone about…
>
> R: Sir, I (inaudible)…
>
> CL: No, I never talked to anyone about returning to work.

R. Sir, when you don't answer my question, but you have a lot of other things to say, it leads me to believe that you quit the job. So let's…

CL: That's not…

R: Let's…

CL: That's not… that's not… that's not true, sir.

R. Okay. Sir, then why don't you just answer the question I asked you?

CL: Okay. Yes, sir."

The final exchange the circuit court identified occurred shortly thereafter when the referee asked about the inconsistencies between Leach's and Hawthorne's version of the events.

"R: So their submission to the Local Office says their [*sic*] short-staffed and you're saying you…they wouldn't give you more hours.

CL: Exactly.

R: Did I hear you right?

CL: Exactly.

R: Alright, hold on. And then you say you were removed from the schedule?

CL: Yes, sir. My… I… can I say one thing, sir?

R: Sir, sir, please!

CL: Just… I'm sorry.

R: All you're doing is digging a hole that you can't get out of. I'm asking you yes or no questions for a reason.

CL: Yes, sir.

R. And I told you you'd be able to tell me everything else once I get some basics down here. But right now I don't have any basics because you won't answer the question, but you've got a lot to say.

CL: Sir, I'm… I'm…

R: Give me a break, sir.

CL: Sir, I'm…

R: I'm trying to…

CL: Yes, sir.

R: … do my job and you're not letting me."

The circuit court classified the referee's conduct as "hectoring" and found that the referee cut off Leach's attempts to explain events or develop the record and "adopted wholesale the version of events put forth by the non-participating Employer."

¶ 39    Contrary to the circuit court's findings, the comments by the referee do not represent hectoring or cross-examination of Leach "in an exceedingly hostile fashion." Instead, as the referee explained, he was attempting to develop the record by obtaining basic information from Leach in the form of yes or no questions. This court has recognized that the referee has the discretion to control the hearing in the best manner for the circumstances. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 825 (2009). Here, the referee clearly sought to obtain some basic information from Leach at the beginning of the hearing in the form of yes or no questions. The referee then intended to allow Leach to further explain his answers later in the hearing. As the referee explained to Leach at the very beginning of the hearing,

"[w]hen I'm done, if there's anything else you need me to know about your search for work, your availability for work or your ability to work and you don't think we've already covered it, you'll have a chance to tell me." When Leach refused to directly answer the referee's questions with either yes or no and instead attempted to jump forward in the hearing process, the referee clearly became frustrated and spoke over Leach, asking him to stop talking.

¶ 40     However, the referee did not prevent Leach from "explain[ing] events or develop[ing] the record" as the circuit court found. The three incidents the circuit court identified occurred at the very beginning of the telephone hearing. For the remainder of the hearing, the referee allowed Leach to explain his version of the events without further "hectoring." The referee also allowed Leach to give long, explanatory answers to his questions, such as Leach's response to the referee's question regarding his work search history quoted above. Furthermore, at the end of the hearing, the referee asked Leach whether he had anything else to add. Leach responded that he did not. The referee began to formally conclude the hearing, but then Leach stated that he did have something to add. Leach then went on to give a lengthy explanation regarding his separation from Hawthorne. Leach concluded, "[t]hat's all I would like to add, sir," and the referee concluded the hearing. Accordingly, the referee afforded Leach a full opportunity to present testimony regarding his separation from Hawthorne and his job search. Although the referee's comments at the beginning of the hearing may have bordered on being inappropriate, we cannot say that they denied Leach a fair hearing where he had an opportunity to be heard, and there is no indication in the record that he did not receive an impartial ruling. See *id.* Although the referee found that Leach voluntarily left his employment, we observe that the Board modified the referee's decision finding that Leach "was separated from employment when he asked that his schedule be modified to allow him weekends off so that he could help his college-aged daughter with her intern activities during the summer." The Board thus rejected Hawthorne's version of the events and accepted Leach's, but nonetheless found him ineligible for benefits because of his lack of work search. As noted, on appeal from the decision of an administrative agency, courts review the decision of the Board, not the referee. *Universal Security Corp.*, 2015 IL App (1st) 133886, ¶ 12. As such, we cannot say that the referee's conduct during the hearing resulted in a denial of due process. See *Sudzus*, 393 Ill. App. 3d at 825-26.

¶ 41                              3. *Illinois Job Link Registration*

¶ 42     Finally, the circuit court found it "astonishing[ ]" that the Board performed its own fact-finding with regard to Leach's registration with Illinois Job Link despite finding that a further hearing after the referee's hearing was unnecessary. The court found that the Board may only take additional evidence through a hearing and its *ex parte* fact-finding, without affording Leach an opportunity to be heard, "inappropriately circumvented the normal adversarial hearing process to seek out evidence to the benefit of the Employer."

¶ 43     As noted, after Leach filed for unemployment benefits, the Department sent Leach a notice informing him that in order to be eligible for employment benefits, he was required to register for work with the Illinois Employment Service through the Illinois Job Link. The notice provided that "*[y]our registration will be considered complete when you create or upload at least one resume.*" (Emphasis in original.) The notice further informed Leach that if he did not complete the registration by May 29, 2018, he would be ineligible for unemployment insurance benefits. At the hearing before the referee, the referee asked Leach if he had completed his

registration for the Illinois Job Link, and Leach responded that he had. In issuing its decision, however, the Board found that Leach had not completed his registration with Illinois Job Link because he had not created or uploaded a resume.

¶ 44 Here, despite the circuit court's assertion that this "*ex parte* fact-finding" denied Leach due process, we find no due process violation by the Board taking notice of a readily verifiable fact to aid in the disposition of a case. See, *e.g.*, *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37. Information on websites and in public records are sufficiently reliable such that judicial notice may be taken. See, *e.g.*, *People v. Ware*, 2014 IL App (1st) 120485, ¶ 29 (appellate court may take judicial notice of Illinois Department of Corrections records because they are public documents); *Kopnick v. JL Woode Management Co.*, 2017 IL App (1st) 152054, ¶ 26 (information on City of Chicago's public website subject to judicial notice); *People v. Vara*, 2016 IL App (2d) 140849, ¶ 37 n.3 (information on federal government's National Sex Offender Public Website subject to judicial notice); *Village of Catlin v. Tilton*, 281 Ill. 601, 602-03 (1917) (indicating a court may take judicial notice of facts that are not in reasonable dispute in that the facts are either (1) generally known within the jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned). Here, the Illinois Job Link website is a public website, and an individual's registration with the website is readily verifiable, and the accuracy of the information cannot be reasonably questioned. We find no sound reason why the Board would not be able to take notice of this publicly available information. It was therefore appropriate for the Board to take notice of Leach's failure to register without offering Leach a further opportunity to testify or otherwise submit evidence. As such, we find no due process violation from the Board's determination that Leach had not registered with the Illinois Job Link, despite his testimony to the contrary.

¶ 45 Because we find no due process violation, we need not address the circuit court's determination that the appropriate remedy for a violation of due process is a full award of benefits.

¶ 46                                        III. CONCLUSION

¶ 47 For the reasons stated, we reverse the judgment of the circuit court and affirm the decision of the Board denying Leach unemployment benefits.

¶ 48 Circuit court judgment reversed; Board decision affirmed.