2022 IL App (1st) 210779

Third Division
August 24, 2022

No. 1-21-0779

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| WILLIAM MASKEVICH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County. |
| | ) | |
| THE ILLINOIS DEPARTMENT OF EMPLOYMENT | ) | No. 20 L 50262 |
| SECURITY, DIRECTOR OF EMPLOYMENT | ) | |
| SECURITY, BOARD OF REVIEW, AND AMAZON | ) | Honorable |
| LLC, | ) | John J. Curry Jr., |
| | ) | Judge, presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Justices McBride and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff William Maskevich appeals *pro se* from an order of the circuit court, which

affirmed the decision of the Board of Review (Board) of the Illinois Department of Employment

Security (IDES), finding that plaintiff's appeal of a determination regarding unemployment

benefits was untimely.

¶ 2    In a nutshell, plaintiff received unemployment insurance benefits from IDES from July to December 2018 but also received, during most of that same time, short-term disability benefits for a knee injury. IDES sent plaintiff a "Notice of Fraud Decision," seeking a refund of unemployment benefits and providing information on how to appeal that determination if plaintiff disagreed. Plaintiff filed that administrative appeal to an IDES referee, who found that she lacked jurisdiction to hear the appeal, as plaintiff filed the appeal more than 30 days after the Notice of Fraud was sent to him. Plaintiff appealed that ruling to the Board, which affirmed, likewise finding that jurisdiction was lacking because plaintiff appealed too late. The circuit court affirmed the Board's final decision.

¶ 3    On appeal, plaintiff contends that the manner in which IDES provided notice of the right to appeal violated "fundamental fairness" and "fair play." Plaintiff further alleges that he was denied "due process" when IDES's determination that he was ineligible for certain benefits was against the manifest weight of the evidence. We find no error in the Board's decision and affirm.

¶ 4    The following factual background is derived from the record on appeal, which includes IDES records, correspondence between IDES and plaintiff, and the transcript of the hearing before an ALJ.

¶ 5    On June 17, 2018, plaintiff filed a claim for unemployment insurance benefits with IDES, asserting that he was discharged by his employer, Amazon LLC, due to lack of work. He received unemployment benefits between July 2018 and December 2018. Between July 14, 2018, and December 8, 2018, however, plaintiff also received short-term disability pay for a knee injury.

¶ 6     On September 30, 2019, IDES mailed plaintiff a "Notice of Audit," stating that plaintiff may have received benefits to which he was not entitled. On October 14, 2019, plaintiff filed a response which included his explanation for the alleged discrepancies and documents in support.

¶ 7     On December 12, 2019, IDES mailed a "Notice of Fraud Decision" to plaintiff's last known address. The notice concluded that plaintiff knowingly made false statements or failed to disclose material facts, which resulted in the payment of benefits for which he was not eligible. IDES determined that plaintiff was overpaid $3561 and would be required to repay that amount. The notice further stated, on the second page, that if plaintiff disagreed with the decision, he could file a request for "reconsideration/appeal" with IDES "within thirty (30) calendar days after the date this notice was mailed to you." If the request were mailed, it "must bear a postmark date within the applicable time limit for filing."  Also included was an "Overpayment Detail" which calculated the overpayment on a weekly basis between July 28, 2018, and December 15, 2018, and a payment coupon containing instructions.

¶ 8     On January 31, 2020, plaintiff submitted an IDES Appeals Worksheet seeking reconsideration because his employer reported wages at the "time paid" rather than at the time earned and paid sporadically. Attached was a letter dated January 30, 2020, further explaining plaintiff's arguments.

¶ 9     On February 20, 2020, a telephonic hearing was held before an ALJ. Plaintiff testified, relevant here, that he did not receive "sufficient notice" of his right to appeal when the "body" of

the notice did not include a date by which the appeal "needed to be made." Rather, the "only" date was January 15, 2020, the date on which plaintiff was to begin repayment.[1]

¶ 10    Plaintiff asserted that he mailed a request for reconsideration to the "Appeals Division" on January 14, 2020, and there was a postal service receipt "of that."[2] However, this document was returned with "the indication" there was nothing for him to appeal. After a "series of phone calls," plaintiff was directed to "Benefit Controls" and given a fax number. Plaintiff believed he emailed his request for an appeal the same day. Plaintiff asserted that no documents he had received stated that he had the right to appeal or specified a deadline for an appeal.

¶ 11    The ALJ then directed plaintiff to the portions of the December 12, 2019, notice stating that he had 30 days to request reconsideration, and listing an address and fax number. The ALJ concluded that because the deadline for filing an appeal was January 11, 2020, plaintiff's appeal was untimely and dismissed it for lack of jurisdiction. Plaintiff agreed that "there was something about filing an appeal," but argued it was "not in the body of the document" or above the signature line. The ALJ then admonished plaintiff that he could appeal the dismissal by filing, within 30 days, a request for a hearing with the Board.

¶ 12    Plaintiff filed a timely appeal to the Board, alleging that the information for appealing from the "fraud letter" was written on the back of the letter and he only "stumbled" across the information "by chance."

---

[1] Based on this court's review of the record and briefs, plaintiff was referring to a "Repayment Agreement," dated December 19, 2019, which sets out a proposed schedule of payments, and lists January 15, 2020, as the due date for plaintiff's first payment. This document is not included in the administrative record, but is attached to one of plaintiff's filings in the circuit court.

[2] Plaintiff included a copy of this envelope and its postmark in his filings in the circuit court. However, it does not appear this request for reconsideration was considered by the ALJ and it is not included in the administrative record.

¶ 13    On May 1, 2020, the Board affirmed the dismissal of plaintiff's appeal, noting the record demonstrated that the notice was mailed to plaintiff's address on December 12, 2019, and included verbiage "setting forth the right to file an appeal within thirty days," meaning that an appeal was due on January 13, 2020 (which was a Saturday). Plaintiff's appeal, received January 31, 2020, was untimely and properly dismissed for lack of jurisdiction.

¶ 14    On June 1, 2020, plaintiff filed a *pro se* complaint for administrative review in the circuit court. During this proceeding, plaintiff filed documents that were not included in the administrative record including, relevant here, a December 19, 2019, "Repayment Agreement" requesting a one-time payment of $3561, or, in the alternative, detailing the terms of a repayment agreement. The repayment agreement stated, in pertinent part, that plaintiff "will make payments of not less than $325.00 beginning on January 15, 2020 and will continue to pay this amount each month thereafter on the same day until the amount is paid in full." At the bottom of the sheet was a space for plaintiff's signature, claimant identification number, and the date.

¶ 15    On June 3, 2021, the circuit court affirmed the Board's decision.

¶ 16    On appeal, plaintiff concedes that he received notice of his right to appeal the fraud decision but argues that "the placement of the notice within the overall, actual decision packet" was not "reasonably calculated" to actually give notice. He further claims that he was denied due process when IDES ignored and overlooked facts, resulting in a determination that was against the manifest weight of the evidence.

¶ 17    In an appeal from the denial of unemployment benefits, "[w]e review the final decision of the Board, rather than the decision of the referee or the circuit court." *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22. Our review is limited to the record before the

administrative agency. 735 ILCS 5/3-110 (West 2018). We thus decline plaintiff's invitation to consider any evidence that was not included in the administrative record. See *Marconi v. Chicago Heights Police Pension Bd.*, 225 Ill. 2d 497, 532 (2006) (reviewing court "may not hear new or additional evidence in support of, or in opposition to, the decision of the administrative agency").

¶ 18    Here, there is no dispute that the Notice of Fraud Decision was mailed to plaintiff on December 12, 2019, that his appeal was due by Monday, January 13, 2020, and that his appeal was filed with IDES on January 31, 2020. Because these operative facts are not in dispute, whether plaintiff's appeal from the fraud decision was timely filed is a matter of law we review *de novo*. See *Goodman v. Ward*, 241 Ill. 2d 398, 406 (2011) ("where the historical facts are admitted or established, but there is a dispute as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which our review is *de novo*").

¶ 19    Agencies have no inherent or common-law power; they are creatures of statute that have only the power that the legislature gave them. *Mercury Sightseeing Boats, Inc. v. County of Cook*, 2019 IL App (1st) 180439, ¶ 55. When " 'an agency acts outside its statutory authority,' " we often say that the agency " 'acts without jurisdiction.' " *Id*. (quoting *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243 (1989)). So when we speak here of IDES's statutory authority to hear an untimely protest, it would not be unusual for the agency to speak to that question in terms of its "jurisdiction," as it did.

¶ 20    Under the Unemployment Insurance Act (Act), an IDES claim adjustor may determine that a person received unemployment benefits for which he or she was ineligible. See 820 ILCS 405/703, 900-01 (West 2018). This determination "may be appealed to a Referee within the time

limits prescribed by Section 800 [of the Act] for appeal from a determination." 820 ILCS 405/900(B) (West 2018). The Act provides that "appeals from a claims adjudicator shall be taken to a Referee" and that unless the claimant files an appeal within 30 days from the date the decision is mailed to him or her, the claims adjudicator's determination "shall be final." 820 ILCS 405/800 (West 2018). This is a mandatory provision that acts as a statute of limitations. *Hernandez v. Department of Labor*, 83 Ill. 2d 512, 517 (1981). The 30-day deadline must be "strictly" complied with and is calculated from the date of service, that is, the mailing of the decision to the last known address of the party entitled to receive it. *Thompson v. Department of Employment Security*, 399 Ill. App. 3d 393, 395 (2010) ("the statute does not confer additional authority on the Board to entertain appeals beyond the 30 days after a decision has been mailed").

¶ 21    We thus concur with the Board that it lacked statutory authority—or jurisdiction—to hear plaintiff's appeal, as plaintiff did not file the appeal within the mandatory 30-day period. *Id.*

¶ 22    Nor can we agree with plaintiff that the notice of his appeal rights was so deficient or confusing as to violate his right to due process. The government is not required to notify an individual of administrative appeal rights, as long as a statute, administrative rule, or some otherwise clear public notice is provided by the government explaining such appeal rights. *City of West Covina v. Perkins*, 525 U.S. 234, 240-41 (1999); *Mercury*, 2019 IL App (1st) 180439, ¶ 89. But if the government chooses to provide notice of those appeal rights, the notice " 'must not be misleading' " or prejudicially confusing. *Mercury*, 2019 IL App (1st) 180439, ¶ 91 (quoting *Grimm v. Calica*, 2017 IL 120105, ¶ 24).

¶ 23    Here, there is no dispute that IDES, in its "Notice of Fraud Decision," included a paragraph on the back page of its notice that explained plaintiff's appeal rights. (Like the State, we take

plaintiff at his word that this second page was the back side of the first, as opposed to a freestanding second page; the record does not allow us to distinguish between these possibilities.)

¶ 24    The paragraph explaining plaintiff's appeal rights read, in its entirety:

"If you disagree with this decision, you may complete and submit a request for reconsideration/appeal. A letter will suffice if you do not have an agency form. Your request must be filed with the Illinois Department of Employment Security within thirty (30) days after the date this notice was mailed to you. If the last day for filing your request is a day that the Department is closed, the request may be filed on the next day the Department is open. Please file the request by mail or fax at the address or fax number listed above. Any request submitted by mail must bear a postmark date within the applicable time limit for filing. If additional information or assistance regarding the appeals process is needed, please contact your Agent."

¶ 25    This language is entirely clear and unambiguous. It begins with the simple, non-legalese introduction, "[i]f you disagree with this decision." It provides the appeal period in terms of days with both the written "thirty" and the number "30." It makes clear that the thirty-day clock begins "after the date this notice was *mailed* to you" (emphasis added), and the date of the mailing is clear from the first page of the Notice—"12/12/19." It explains that the appeal may be transmitted by mail or fax and provides both a mail address and a fax number in the heading of the first page. It clearly explains that the appeal may be by letter if the applicant does not have an agency form. And if all of that were not enough, it advises that "[i]f additional information or assistance regarding the appeals process is needed, please contact your Agent," whose name and phone

number is provided at the bottom of the first page. So if the citizen were at all confused by the instructions given, a simple phone call to the IDES agent would clear up any issues.

¶ 26    This paragraph explaining plaintiff's appeal rights was in the same size and font as the other paragraphs of the Notice of Fraud Decision.  It was, in fact, the very first paragraph on the second page.  It was not buried among other text but was its own freestanding paragraph.  And it was, according to plaintiff, on the reverse side of the Notice, thus incapable of detachment.

¶ 27    Plaintiff complains that the front page of this Notice ended with a "signature line" identifying the IDES special agent who was sending the notice. From this, he suggests that the sign-off at the bottom of the first page indicated that nothing more was left to be read.

¶ 28    As the State notes, neither our supreme court nor this court has been receptive to the notion that a citizen is not required to flip a page to read on, beyond the front page of a government notice. In the decision of *In re Marriage of Miller*, 227 Ill. 2d 185, 201 (2007), Miller was held to be "aware of his statutory [child support] obligations, and equally aware of the $100-per-day penalty" for noncompliance, based on a provision that was on the reverse side of his withholding notice. We likewise upheld the state's deduction of parking fines from a university employee's paycheck from a challenge to lack of notice, though notice of that deduction authority was on the reverse side of the employee's notice of appointment. See *Feldman v. Board of Trustees of Southern Illinois University*, 108 Ill. App. 3d 1127, 1130, 1135 (1982).

¶ 29    We do not think it is asking too much of our citizenry to read a notice in full, even if the information continues beyond the front page. And that is particularly true of someone who disagrees with the decision and plans to appeal. Surely it would not be unreasonable to expect a would-be protestor to at least read the entire notice in full in determining his or her next steps. See

*O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 345 (7th Cir. 2018) ("a consumer who reads the front and back of the first page of a short letter and then completely disregards the second page has not read the letter with care."). And again, if anything contained within the mailing from IDES were confusing, the recipient was informed of the option of contacting the IDES agent by phone at the provided number.

¶ 30    As the notice was clear, easy to understand, and prominently displayed, we find no due process violation in the notice given to plaintiff of his appeal rights.

¶ 31    In sum, the Board correctly found that it lacked statutory authority to consider plaintiff's protest. There is thus no need to consider the underlying merits of the protest. The judgment of the circuit court, affirming the decision of the Board, is affirmed.

¶ 32    Affirmed.

---

**No. 1-21-0779**

---

| | |
|---|---|
| **Cite as:** | *Maskevich v. Illinois Department of Employment Security*, 2022 IL App (1st) 210779 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-L-50262; the Hon. John J. Curry, Jr., Judge, presiding. |
| **Attorneys for Appellant:** | William Francis Maskevich, *pro se*. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, State of Illinois; Jane Elinor Notz, Solicitor General; Caleb Rush, Assistant Attorney General. |