2025 IL App (1st) 241073-U

No. 1-24-1073

Order filed May 13, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| SHANNON MAZUR, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 L 50598 |
| | ) | |
| THE DEPARTMENT OF EMPLOYMENT SECURITY, | ) | |
| DIRECTOR OF EMPLOYMENT SECURITY, THE | ) | |
| BOARD OF REVIEW, and HOLISTIC ANIMAL CARE, | ) | |
| INC., | ) | Honorable |
| | ) | Patrick T. Stanton, |
| Defendants-Appellees. | ) | Judge, presiding. |

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Where plaintiff voluntarily left her employment without good cause attributable to her employer, the Board of Review's denial of unemployment benefits is affirmed.

¶ 2   Plaintiff Shannon Mazur appeals *pro se* from an order of the circuit court affirming the decision of the Board of Review (Board) of the Illinois Department of Employment Security (IDES) to deny her claim for unemployment benefits. In this appeal, plaintiff argues that she was

entitled to unemployment benefits where she left her employment due to a conflict with another employee. We affirm.

¶ 3    In March 2023, plaintiff filed an application for unemployment benefits claiming she worked for her former employer, Holistic Animal Care, Inc. (Holistic), from October 2014 until February 2023, when Holistic "fired" her. A claims adjudicator interviewed plaintiff, who asserted Holistic hired a man, later identified as Daniel, who was "very difficult to work with" and threatened her and her husband and son, who also worked for Holistic. Plaintiff stated that Daniel "was out on bail for murder." She reported the incidents to her "boss," who told her there was nothing her boss could do and sent her a text message stating that plaintiff and Holistic should "part ways."

¶ 4    Contesting the claim, Holistic asserted that plaintiff made a series of demands about issues with other employees which were mostly self-created. Holistic stated that plaintiff "was known to create a hostile work environment." When Holistic denied her demands for changes at the clinic, plaintiff gathered her possessions, turned in her keys, and left.

¶ 5    On March 27, 2023, the claims adjudicator determined that plaintiff was ineligible for benefits because she left work voluntarily without good cause attributable to Holistic.

¶ 6    In April 2023, plaintiff filed a request for reconsideration, arguing that she did not voluntarily leave her employment because Daniel was violent and threatening to her and her family members who also worked for Holistic. Although plaintiff and Holistic's owner attempted "to figure out a solution to keep [Daniel] away from [plaintiff]," she learned Daniel was on bond for murder and was terrified to work with him. Plaintiff discovered that Holistic "decided" her family members "weren't going to keep [their] jobs" through a text message the employer sent to

plaintiff's colleague. Plaintiff attached a screenshot of the alleged text message from "Karin" to "Shelby" that stated, in relevant part, that "the Mazur family and I have decided to part ways" and asked whether, as the Mazurs claimed, Shelby would also be leaving.

¶ 7    The matter proceeded to a telephone hearing with a referee on May 5, 2023, attended by plaintiff, Karin Fischer, the president of Holistic, and Jose Rivera, the manager of Doggy Day Care.[1]

¶ 8    Plaintiff testified that she worked for Holistic for almost eight years as a "Doggy Daycare Attendance [sic] and Manager." Plaintiff informed Fischer that she was leaving the job because Daniel was "very volatile" and plaintiff "couldn't take it anymore." Daniel "grabbed" plaintiff's son, who also worked for Holistic, by the throat and "jumped at" plaintiff "a couple times" before plaintiff's husband intervened. Daniel yelled "cuss words" at them and would come "at you with his chest" to intimidate them. Plaintiff reported the matter to Rivera and Fischer, but Daniel was not disciplined. Plaintiff asserted that her son left the job at the same time she did and received unemployment benefits.

¶ 9    Fischer testified that plaintiff left her job because of a conflict with Daniel and other employees. Fischer reviewed a video and found no evidence that Daniel placed his hands around plaintiff's son's neck, but saw that Daniel pushed plaintiff's son back when the son "came after him." The matter was addressed with Daniel. Fischer heard about a "mutual shouting match"

---

[1]The record on appeal reflects that, prior to the hearing, plaintiff sent to the referee a screenshot of text messages she sent to an unnamed party. In the text messages, plaintiff informed the recipient that she wished to speak and wanted the recipient to return her phone call, and that "HR says we shouldn't have to work under these conditions." Plaintiff informed the recipient that she was not coming to work because the recipient did not call her "to work this bull*** out." The record, which includes a transcript of the telephone hearing, does not reflect that the referee received or considered the text messages.

between plaintiff and Daniel, but was not aware of incidents where Daniel entered the facility swearing and intimidating people.

¶ 10    Plaintiff had a history of instigating issues with other employees by "repeated after hour texting" to the point where most employees, including Daniel, blocked her or changed their phone numbers. Fischer addressed the situation with plaintiff, and scheduled so that plaintiff would not have to work with Daniel. Plaintiff then told Fischer that if Daniel and another employee plaintiff conflicted with were "not fired," then she would leave. Fischer further testified that plaintiff began contacting Holistic's clients and "badmouthing the business." Plaintiff's husband also began to harass clients entering the business, so Holistic filed a police report.

¶ 11    Rivera testified that plaintiff texted Daniel off hours about "personal stuff," antagonized him about his past, and made him uncomfortable at work. Plaintiff began texting Rivera in the middle of the night to tell him that he was a bad manager and person, so he blocked her. Plaintiff's husband followed employees as they walked home and antagonized them, and plaintiff and her family would urge employees to stop working at Holistic. "Everybody" told plaintiff to stop texting the employees after hours, but she persisted. Daniel reported the incident between himself and plaintiff's son, and told Rivera that the son seemed to want to pick a fight. Eventually, plaintiff's son picked fights with everyone at work.

¶ 12    In a decision mailed to plaintiff on May 8, 2023, the referee affirmed the claims adjudicator's decision, finding that plaintiff voluntarily left her job for personal reasons without good cause attributable to Holistic under the meaning of Section 601A of the Unemployment Insurance Act (Act) (820 ILCS 405/601(A) (West 2022)).

¶ 13    Plaintiff appealed to the Board on June 3, 2023, arguing, *inter alia*, that Fischer lied to the referee. She enclosed a screenshot of the headline of an article about a man named Daniel who had been charged with a 2015 murder. She also attached a copy of the text chain previously sent to the referee, and the screenshot of the text message from Fischer to Shelby stating that "the Mazur family and I have decided to part ways." Plaintiff did not certify that she served a copy of the written argument and additional evidence upon Holistic.

¶ 14    On October 3, 2023, the Board mailed its decision affirming the referee's decision and finding plaintiff ineligible for benefits. The Board first stated that it did not consider plaintiff's written argument and additional evidence because plaintiff did not serve them upon Holistic, and plaintiff did not explain why the additional evidence was not produced before the referee. The Board found that plaintiff quit due to a conflict with a coworker but her leaving was not attributable to Holistic because Holistic investigated the situation and scheduled so that plaintiff would not have to work with him. Plaintiff did not explain why she did not continue working after her employer arranged the schedule this way. The Board found "an ordinary prudent person, who wanted to remain employed, would not have quit without trying to work the schedule created by [Holistic] that did not require her to be anywhere near her co-worker." As plaintiff did not make a reasonable effort to comply with the new work schedule Holistic created in order to resolve plaintiff's conflict with her coworker, she did not establish good cause for quitting.

¶ 15    On November 6, 2023, plaintiff filed a *pro se* complaint for administrative review in the circuit court. Plaintiff argued that Daniel threatened and harassed her, and after she discovered that he was on bail having been accused of murder, she went to Fischer and Rivera, who did not "help [her] feel safe from [Daniel's] constant blow ups and giving [plaintiff] trouble inside [her]

workplace." Plaintiff asserted that Fischer lied when she said she removed Daniel from plaintiff's shifts. Plaintiff attached, *inter alia*, a photocopy of the headline purportedly about Daniel being charged with murder, and text message exchanges that were not presented during the administrative proceedings, including one between her and Fischer with Fischer stating, "I'm OK with you all not coming back. I think it's best we part ways here *** Please don't come by the kennel today with the crew that is on shift there."

¶ 16    On April 19, 2024, the circuit court affirmed the Board's decision in a written order. The court found that plaintiff left work due to alleged harassment from a fellow employee, which she reported to Holistic. Holistic attempted to remedy the situation by changing plaintiff's work schedule to separate her from the other employee, but plaintiff demanded the employee be terminated. After this demand was not met, plaintiff resigned. The court concluded that the Board's decision was not clearly erroneous because plaintiff left her employment without attempting to resolve the conflict.

¶ 17    On appeal, plaintiff argues that the circuit court erred in affirming the Board's decision, largely repeating her arguments before the referee and Board. Plaintiff alleges that she feared for her safety at work, her mental health deteriorated due to the situation with Daniel, and the work environment became so toxic that she "had to" give Fischer an ultimatum regarding her employment. Plaintiff alleges that Fischer decided that they should "part ways," and plaintiff's son received unemployment benefits after leaving work at the same time for the same reason. Plaintiff contends that Daniel had since been arrested for "trying to harass another employee and stalking and home invasion on [*sic*] another young lady that worked there."

¶ 18    At the outset, plaintiff's brief fails to comply with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020), which governs the content of appellate briefs. For example, her brief does not contain a proper "Points and Authorities" statement, any statement of jurisdiction, or an argument section containing citations to the record or to legal authority supporting her claims. See Ill. S. Ct. R. 341(h)(1), (4), (7) (eff. Oct. 1, 2020).

¶ 19    A reviewing court is entitled to briefs that present an organized and coherent legal argument in accordance with the supreme court rules. *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). A party's status as a *pro se* litigant does not relieve her obligation to comply with the applicable appellate practice rules. *Fryzel v. Miller*, 2014 IL App (1st) 120597, ¶ 26. The supreme court rules are not suggestions, and we have the authority to strike a brief or dismiss an appeal where the appellant's brief does not comply with Rule 341's requirements. *Epstein v. Davis*, 2017 IL App (1st) 170605, ¶ 22. However, the record on appeal is short and we have the benefit of a cogent appellee's brief, and therefore decline to dismiss the appeal on this basis. See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing merits of the appeal despite appellant's numerous violations of Supreme Court Rule 341(h)).

¶ 20    Under the Act, any decision by the Board shall be reviewable by the circuit court in accordance with the provisions of the Administrative Review Law. 820 ILCS 405/1100 (West 2022). On appeal, we review the decision of the Board, not that of the circuit court. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22.

¶ 21    The Board is responsible for weighing the evidence, determining the credibility of the witnesses, and resolving conflicts in the testimony. *Hurst v. Department of Employment Security*,

393 Ill. App. 3d 323, 329 (2009). Reviewing courts may not judge the credibility of the witnesses, resolve conflicts in the testimony, or reweigh the evidence. *Woods v. Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 16.

¶ 22 The standard of review and, thus, the deference afforded to the Board's decision depends on whether the issue involved is a question of fact, law, or a mixed question of fact and law. *Leach v. Department of Employment Security*, 2020 IL App (1st) 190299, ¶ 22. The Board's factual findings are considered *prima facie* correct and will be reversed only if they are against the manifest weight of the evidence. *Id*. The Board's legal determinations are reviewed *de novo*. *Id*. Mixed questions of fact and law, namely situations where "the historical facts are admitted or established and the only question is whether the facts satisfy the statutory standard, are subject to reversal only where they are clearly erroneous." *Id*. A decision is clearly erroneous where the reviewing court is left with "the definite and firm conviction that a mistake has been committed." *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001).

¶ 23 Here, the Board's determination that plaintiff voluntarily left her employment without good cause attributable to the employer is a mixed question of law and fact and will be reviewed for clear error. *Lojek v. Department of Employment Security*, 2013 IL App (1st) 120679, ¶ 32.

¶ 24 The Act's main purpose is to "relieve the economic insecurity caused by involuntary unemployment," and, thus, must be construed liberally in favor of awarding unemployment benefits to unemployed workers. *Petrovic*, 2016 IL 118562, ¶ 23. Nevertheless, certain unemployed individuals are disqualified from obtaining benefits, including those who left work voluntarily "without good cause attributable to the employing unit." 820 ILCS 405/601(A) (West 2022).

¶ 25     Under the Act, good cause results from "pressure to terminate employment that is both real and substantial and that would compel a reasonable person under the circumstances to act [in] the same manner." *Childress v. Department of Employment Security*, 405 Ill. App. 3d 939, 943 (2010). A voluntary leaving is attributable to the employer where the "cause for leaving is within the employer's control," including situations where the employer "has implemented a substantial change in the employment conditions." *Lojek*, 2013 IL App (1st) 120679, ¶ 36. Further, the employee "must make a reasonable effort to resolve the cause of her leaving when such effort is possible." (Internal quotation marks omitted.) *Id.*; see 56 Ill. Adm. Code 2810.101(b) (2010). The plaintiff has the burden of proving that she satisfies the eligibility requirements. *Lojek*, 2013 IL App (1st) 120679, ¶ 34.

¶ 26     The Board's determination that plaintiff voluntarily left her employment at Holistic without good cause attributable to Holistic was not clearly erroneous. Plaintiff testified before the referee that her coworker Daniel harassed and intimidated her and her family. She testified that she reported this to Holistic but Daniel was not disciplined and she left Holistic because she "couldn't take [the situation with Daniel] anymore." Fischer, however, testified that she scheduled the employees so that plaintiff would not have to work with Daniel, but plaintiff instead told Fischer that if Fischer did not fire Daniel, plaintiff would quit. Based on this record, plaintiff has not shown that the Board's determination that plaintiff did not make a reasonable effort to resolve her conflict with Daniel before leaving her employment, despite her employer's reasonable efforts to address the situation, was clearly erroneous. Again, an employee "must make a reasonable effort to resolve the cause of her leaving when such effort is possible." *Id.* ¶ 36. As plaintiff did not make a

reasonable effort to resolve the situation, she has not met her burden of proving that she satisfies the eligibility requirements. See *id*. ¶¶ 34, 36.

¶ 27    To the extent that plaintiff argues that Fischer lied about rearranging the schedule and that Holistic terminated her employment, we note that the evidence on which plaintiff relies was not properly before the Board, and our review is limited to the record before the administrative agency. See *Maskevich v. Department of Employment Security*, 2022 IL App (1st) 210779, ¶ 17. Here, not only did plaintiff not serve the written argument and additional evidence upon Holistic, but she did not explain why she was unable to introduce the evidence at the hearing before the referee. The Board's decision not to consider the argument and additional evidence, therefore, was within its discretion. See 820 ILCS 405/803 (West 2022). We, thus, decline plaintiff's invitation to consider any evidence that was not included in the administrative record. See *Maskevich*, 2022 IL App (1st) 210779, ¶ 17.

¶ 28    In sum, our review of the record confirms that the evidence supported the Board's ruling that plaintiff voluntarily left her employment without making a reasonable effort to resolve the cause of her dissatisfaction with her employment. She made no effort to try out the new schedule Holistic created in order that she and Daniel would not interact. Instead, she left her job, which constituted a voluntary leaving without good cause attributable to Holistic. See *Lojek*, 2013 IL App (1st) 120679, ¶ 36. Accordingly, the Board's determination that plaintiff was not eligible to receive unemployment benefits was not clearly erroneous. See *id*. ¶ 32.

¶ 29    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County affirming the Board's decision.

¶ 30    Affirmed.